2006 ME 127

**William R. BODACK**

v.

**TOWN OF OGUNQUIT et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Feb. 27, 2006.

Decided: Nov. 7, 2006.

T. Hallett (the developers)[1] appeal from a judgment entered in the Superior Court (York County, *Fritzsche, J.*) vacating the decision of the Ogunquit Planning Board. The Planning Board granted preliminary approval to the developers to build a residential subdivision called Ogunquit Village Estates (the subdivision). The developers contend that the court improperly vacated the Planning Board's decision, and argue that the Board's determination that the subdivision would not cause an unreasonable impact on traffic, and its grant of a waiver of the access requirement in the Board's Subdivision Standards, are supported by applicable law and substantial evidence in the record. Although for somewhat different reasons, we affirm the judgment of the Superior Court.

John R. Bannon, Esq., Sarah A. McDaniel, Esq., Murray Plumb & Murray, Portland, for plaintiff.

Patrick J. Scully, Esq., Bernstein Shur Sawyer & Nelson, P.A., Portland, (for Town of Ogunquit), Durward W. Parkinson, Esq., Leah B. Rachin, Esq., Bergen & Parkinson, LLC, Kennebunk, (Ogunquit Village Estates, LLC et al.), for defendants.

Panel: CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

CLIFFORD, J.

[¶ 1] Ogunquit Village Estates, LLC, the Seafarer Development Group, and Stephen

## I. BACKGROUND

[¶ 2] In September of 2002, the developers filed an application for subdivision approval with the Planning Board to build a retirement community for active adults over the age of fifty-five. The most recent plans call for thirty-five dwelling units to be constructed on two parcels of land totaling approximately fifty acres located on the southern and northern sides of Berwick Road in Ogunquit. William R. Bodack owns property immediately adjacent to the proposed subdivision's southern parcel. The Planning Board and the public, including Bodack, raised various concerns about the subdivision, noting, among other things, its size and potential impact on traffic, and specifically the level of service (LOS) at the intersection of Berwick Road and U.S. Route 1 (the intersection).[2]

---

1. Although the Town of Ogunquit participated in the proceedings before the Superior Court, it is not a party to this appeal.

2. A level of service (LOS) rating denotes the time it takes a vehicle to pass through an

intersection, and reflects the amount of traffic in the area. An intersection is rated on a scale of "A" to "F," with "F" being the lowest rating. An LOS of "F" signifies that it takes each vehicle greater than fifty seconds to pass

[¶ 3] Also at issue was the access requirement found in section 10.3.1.11 of the Subdivision Standards that requires subdivisions containing fifteen or more lots to have at least two street connections with existing public streets. *See* Ogunquit, Me., Standards for Reviewing Land Subdivisions and Other Projects § 10.3.1.11 (Apr. 3, 2000). Because the subdivision's southern parcel contains fifteen lots, but has only one access road, a waiver of section 10.3.1.11 is required for subdivision approval.

[¶ 4] In March of 2005, the Planning Board issued a written decision approving the application to build the subdivision, and finding that, although the subdivision would cause an increase in traffic congestion at the intersection, such an increase would not result in an unreasonable impact on traffic. The Planning Board waived the two-street-connections requirement of section 10.3.1.11, but did not state the reasons for its waiver of the access requirement.

[¶ 5] Bodack appealed the Planning Board's decision to the Superior Court pursuant to M.R. Civ. P. 80B,[3] contending (1) that the subdivision would exacerbate existing traffic problems at the intersection; (2) that the application did not adequately provide for open space; and (3) that the developers should not have been granted a waiver of the access requirement. The Superior Court concluded that the Board erred in approving the subdivision because it misconstrued the Zoning Ordinance and Subdivision Standards pertaining to traffic control, and because no special circumstances exist that would permit a waiver of the access requirement. Accordingly, the court vacated the decision of the Planning Board. Both parties appealed.[4]

## I. DISCUSSION

### A. Standard of Review

[¶ 6] When the Superior Court is acting in its appellate capacity, we review the Planning Board's decision "directly for an abuse of discretion, error of law, or findings unsupported by substantial evidence in the record." *Herrick v. Town of Mechanic Falls*, 673 A.2d 1348, 1349 (Me. 1996). "Substantial evidence exists when a reasonable mind would rely on that evidence as sufficient support for a conclusion ...." *Forbes v. Town of Southwest Harbor*, 2001 ME 9, ¶ 6, 763 A.2d 1183, 1186. A Planning Board's decision is given deference and "[w]e will not substitute our own judgment for that of the Board." *Id.* The interpretation of a local ordinance, however, "is a question of law, and we review that determination de novo." *Gensheimer v. Town of Phippsburg*, 2005 ME 22, ¶ 16, 868 A.2d 161, 166.

### B. Interpretation of the Zoning Ordinance and Subdivision Standards

[¶ 7] Bodack contends that the Planning Board's approval of the subdivision was error because the plain language

---

through an intersection. Traffic studies conducted by the Planning Board and the developers confirmed that the intersection operates at an LOS of "F."

3. Title 30–A M.R.S. § 4353(1) (2005) provides that a direct appeal of a planning board decision to the Superior Court is permissible only if provided for in the municipal zoning ordinance. Ogunquit's Zoning Ordinance does provide for such direct appeals. Ogunquit,

Me., Zoning Ordinance § 6.5(B) (Apr. 4, 1998).

4. We have considered Bodack's cross-appeal from that part of the Superior Court's judgment upholding the decision of the Planning Board that the developers were in compliance with municipal provisions governing open space. We discern no error in that portion of the court's judgment.

of the Zoning Ordinance and Subdivision Standards prohibits any development that would create additional traffic at intersections that cannot absorb further traffic. The developers contend that the Planning Board correctly interpreted the Zoning Ordinance and Subdivision Standards to approve the subdivision if it would not cause any unreasonable congestion or unsafe conditions at the intersection.

[¶ 8] Before approving a subdivision permit, the Planning Board must consider and review traffic-related criteria pursuant to 30–A M.R.S. § 4404(5) (2005), the Ogunquit Zoning Ordinance, and the Planning Board's own Subdivision Standards. Section 4404 provides:

When adopting any subdivision regulations and when reviewing any subdivision for approval, the municipal reviewing authority shall consider the following criteria and, before granting approval, must determine that:

. . . .

5. **Traffic.** The proposed subdivision will not cause unreasonable highway or public road congestion or unsafe conditions with respect to the use of the highways or public roads existing or proposed . . . .

30–A M.R.S. § 4404. Section 1.1.5 of the Subdivision Standards mirrors section 4404(5) and provides that, before granting approval for a proposed subdivision, the Planning Board must determine that the subdivision "[w]ill not cause unreasonable highway or public road congestion or un-

safe conditions with respect to use of the highways or public roads existing or proposed." Ogunquit, Me., Standards for Reviewing Land Subdivisions and Other Projects § 1.1.5 (Apr. 3, 2000).

[¶ 9] The Town's Zoning Ordinance, however, imposes more stringent traffic requirements than the reasonableness standards found in the State of Maine statute or the Planning Board's Subdivision Standards. Section 8.13(A)(3) of the Town's Zoning Ordinance provides:

The street giving access to the lot and neighboring streets which can be expected to carry traffic to and from the development shall have traffic carrying capacity and be suitably improved to accommodate the amount and types of traffic generated by the proposed use. *No development shall increase the volume:capacity ratio of any street above 0.8 nor reduce the street's Level of Service to "D" or below.*

Ogunquit, Me., Zoning Ordinance § 8.13(A)(3) (Apr. 4, 1998) (emphasis added).[5]

[¶ 10] In support of the Planning Board's determination that the proposed subdivision would not create unreasonable traffic congestion at the intersection, the developers contend that section 8.13(A)(3) of the Zoning Ordinance should be construed in light of the reasonableness standard found in section 1.1.5 of the Subdivision Standards, as well as 30–A M.R.S. § 4404(5).[6] Bodack argues that section

5. The developers urge us to take judicial notice, pursuant to M.R. Evid. 201(b), of a recent amendment to section 8.13(A)(3) of the Zoning Ordinance, which had not been enacted at the time of the Planning Board hearings. *See* Ogunquit, Me., Zoning Ordinance § 8.13(A)(3) (Jan. 24, 2005). Because the amendment was adopted after the Planning Board approved the developers' application, however, we apply section 8.13(A)(3) as written at the time the Planning Board approved the subdivision.

6. In support of their interpretation of the Zoning Ordinance and Subdivision Standards, the developers rely on *Thacker v. Konover Dev. Corp.*, 2003 ME 30, 818 A.2d 1013. *Thacker* construed former 30–A M.R.S.A. § 4404(5) (Supp.2002), which, like the current version, *see* 30–A M.R.S. § 4404(5)

8.13(A)(3) of the Zoning Ordinance prohibits the Planning Board from approving the subdivision because it establishes specific minimum standards that govern the more general "reasonableness" provision of the Subdivision Standards.

[¶ 11] The Zoning Ordinance and Subdivision Standards each contain provisions regarding how to reconcile conflicting provisions within the Ordinance and Standards. Section 1.5 of the Zoning Ordinance provides: "Whenever the requirements of this Ordinance are in conflict with the requirements of any other lawfully adopted rules, regulations, or ordinances, the *most restrictive or that imposing the higher standards shall govern.*" Ogunquit, Me., Ogunquit Zoning Ordinance § 1.5 (Apr. 4, 1998) (emphasis added). Similarly, section 10.1.1 of the Subdivision Standards provides that "the *most rigid requirement* of either this standard, the zoning or other ordinance shall apply whenever they may be in conflict." Ogunquit, Me., Standards for Reviewing Land Subdivisions and Other Projects § 10.1.1 (Apr. 3, 2000) (emphasis added).

[¶ 12] Section 8.13(A)(3) of the Zoning Ordinance, as applied in the instant case, imposes a more restrictive standard than, and thus is in conflict with, the reasonableness standard found in section 1.1.5 of the Subdivision Standards. To conclude that the reasonableness standard found in section 1.1.5 and section 4404(5) of title 30–A applies, and that the specific numerical requirements of section 8.13(A)(3) do not apply would render those requirements a nullity. Rules of statutory construction require zoning ordinances and subdivision standards to be interpreted "so as [not] to render a provision a surplusage." *Kimball v. Land Use Regulation Comm'n,* 2000 ME 20, ¶ 26, 745 A.2d 387, 394. It is the burden of the developers, as applicants, "to demonstrate that the proposed subdivision will satisfy every requirement of the … town ordinance," namely, that the subdivision will not exacerbate the traffic problems at the intersection in violation of section 8.13(A)(3). *Grant's Farm Assocs., Inc. v. Town of Kittery,* 554 A.2d 799, 801 (Me.1989). The traffic studies performed on the intersection found that it had an LOS of "F." Adding any traffic to this already failing intersection would adversely impact its LOS, as Bodack correctly asserts. Because the Planning Board improperly applied the reasonableness standard found in section 1.1.5 of the Subdivision Standards and section 4404(5) of the State statute, as opposed to the more restrictive standard found in section 8.13(A)(3) of the Zoning Ordinance, the Superior Court correctly vacated the Board's approval of the subdivision. *See Herrick,* 673 A.2d at 1349.

## C. Waiver of the Access Requirement

[¶ 13] The developers contend that the Planning Board's decision to grant a waiver of the access requirement in the Board's Subdivision Standards was supported by the evidence because special circumstances exist to justify the waiver. Bodack contends that the Planning Board's decision never made a specific finding that the developers met the stan-

(2005), required only a standard of reasonableness. *Thacker,* 2003 ME 30, ¶ 12, 818 A.2d at 1019. Here, the subdivision would worsen the LOS at the intersection, and the applicable regulation, section 8.13(A)(3) of the Zoning Ordinance, mandates that "[n]o development shall increase the volume:capacity ratio of any street above 0.8 nor reduce the street's Level of Service to "D" or below." Ogunquit, Me., Ogunquit Zoning Ordinance § 8.13(A)(3) (Apr. 4, 1998). Section 8.13(A)(3) does not utilize the reasonableness standard found in 30–A M.R.S. § 4404(5), making *Thacker* distinguishable.

dards for a waiver of the access requirement, and that the Superior Court correctly concluded that the evidence did not support such a waiver.

[¶ 14] The findings of a planning board must be "sufficient to apprise either us or the parties of the basis for their conclusion." *Christian Fellowship & Renewal Ctr. v. Town of Limington,* 2001 ME 16, ¶ 10, 769 A.2d 834, 837. Although an agency is not always required to issue a complete factual record, written factual findings must be sufficient to show the applicant and the public a rational basis of its decision.[7] *York v. Town of Ogunquit,* 2001 ME 53, ¶ 14, 769 A.2d 172, 178. Section 10.3.1.11 provides, in relevant part: "Subdivisions containing fifteen (15) lots or more shall have at least two street connections with existing public streets ...." Ogunquit, Me., Standards for Reviewing Land Subdivisions and Other Projects § 10.3.1.11 (Apr. 3, 2000). Section 12.1 of the Subdivision Standards allows the Planning Board to waive or vary this requirement "[w]here the Planning Board finds that extraordinary and unnecessary hardships may result from strict compliance with these standards or where there are special circumstances of a particular plan ...." Ogunquit, Me., Standards for Reviewing Land Subdivisions and Other Projects § 12.1 (Apr. 3, 2000).

[¶ 15] We have previously addressed a waiver of the same regulation at issue in the present case: section 10.3.1.11 of the Subdivision Standards. *See York,* 2001 ME 53, 769 A.2d 172. In upholding the Planning Board's waiver of the access requirement, we noted that "[t]he Planning Board does have the authority to waive strict application of Subdivision Standards in certain circumstances, on a Board finding of extraordinary and unnecessary hardship *or* because of the special circumstances of a plan." *Id.* ¶ 10, 769 A.2d at 176. There, the Planning Board had issued twelve pages of findings of fact approving the plan and granting the developers a waiver of the access requirement, in which it "disclosed the lengthy considerations underlying each waiver." *Id.* ¶ 4, 769 A.2d at 174. We further noted: "There was sufficient competent evidence, including evidence supporting a finding of the special circumstances of [the developer's] plan, on which the Board could have based its ample findings of fact." *Id.* ¶ 15, 769 A.2d at 178.

[¶ 16] In this case, the Planning Board never made a finding that the waiver was granted due to extraordinary and unnecessary hardships or the special circumstances attendant to the developers' plan, nor did it disclose the considerations or factual findings supporting the waiver. The Planning Board is required to make written factual findings sufficient to show the parties, the public, and an appellate court the basis for its decision to grant the waiver. Although the evidence did not preclude the Planning Board from making such findings,[8] because the Planning Board failed to make any written factual findings

---

7. Although in certain circumstances we may conclude that, "[i]f there is sufficient evidence on the record, the Board's decision will be deemed supported by implicit findings," *Forester v. City of Westbrook,* 604 A.2d 31, 33 (Me.1992), this does not negate the requirement that the Board make written factual findings with respect to waivers or that such findings must be supported by record evidence.

8. We disagree with the Superior Court's conclusion that the evidence is insufficient as a matter of law to allow the Planning Board to find the existence of extraordinary and unnecessary hardships or special circumstances necessary to support a waiver of the access requirement.

as to why it granted the waiver, the Planning Board's decision granting a waiver of the access requirement was correctly vacated.

The entry is:

Judgment affirmed.