STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
CONSOLIDATED ACTIONS

ᵖⱯꜰ -/ₒₖ- ᵖ/ᵤ/

OGUNQUIT VILLAGE ESTATES,
LLC, et al.,

Plaintiffs

v.                                          AP-07-22

THE INHABITANTS OF THE
TOWN OF OGUNQUIT, et al.,

Defendants
*********************************************        **ORDER AND DECISION**

WILLIAM R. BODACK,

Plaintiff

v.                                          AP-07-38

THE INHABITANTS OF THE
TOWN OF OGUNQUIT, et al.,

Defendants


These consolidated appeals are based on the more recent attempt of Ogunquit Village Estates, LLC and Stephen T. Hallett to obtain approval from the Ogunquit Planning Board to build "a retirement community for active adults over the age of fifty-five" on some 50 acres of land bordering Berwick Road in Ogunquit. See *Bodack v. Town of Ogunquit*, 2006 ME 127, ¶2 909 A.2d 620 for the history of this case. In *Bodack* the subdivision approval was ultimately primarily denied because of the developer's inability to meet traffic standards contained in the local ordinance.

The Town of Ogunquit has since amended its Zoning Ordinance at Section 8.13.A.3 regarding traffic. When the Selectmen declined to authorize requested changes regarding traffic flow and management the Ogunquit Planning Board denied this most recent request for subdivision approval. The developers have appealed that decision in AP-07-22. A nearby property owner William Bodack has also appealed that decision in case AP-07-38 arguing that the Planning Board was correct in denying the request for subdivision approval but should also have denied it for additional reasons. The cases have been consolidated, briefed and argued. In case AP-07-22 only Count I, the 80B appeal, will be decided now. The remaining four counts have been severed and are subject to a separate procedural order.

The key zoning ordinance provision is Section 8.13.A.3 of the Ogunquit Zoning Ordinance which reads as follows:

A. General. Provision shall be made for vehicular access to all development and circulation upon the lot in such a manner as to safeguard against hazards to traffic and pedestrians in the street and within the development, to avoid traffic congestion on any street and to provide safe and convenient circulation on public streets and within the development. More specifically, access and circulation shall also conform to the following standards and the design criteria below.

3. The street giving access to the lot and neighboring streets which can be expected to carry traffic to and from the development shall have traffic carrying capacity and be suitably improved to accommodate the amount and types of traffic generated by the proposed use. No development shall increase the volume:capacity ratio of any street above 0.8 nor reduce the street's Level of Service to "D" or below, unless the applicant constructs traffic improvements or agrees to reasonable conditions of approval to mitigate the traffic impacts of the proposed development. If the volume capacity ratio of the existing street giving access to the proposed development already exceeds 0.8, or the level of service of streets or nearby intersections leading to the proposed project are already at "D" or below, the application shall be denied unless the applicant can improve the street or intersection capacities or level of service so that no further diminution of the level of service will occur, should the project be constructed. (Amended 4/5/05 ATM)

2

It is this section, in an earlier version, which was the primary reason for the decisions in *Bodack* by the Superior Court and Law Court and, which in its current form, was the reason for the denial of the most recent application. The developer has offered several arguments challenging the current version of Section 8.13.A.3.

The first claim is that Section 8.13 is inconsistent with the Town's comprehensive plan and is therefore invalid. While there is no doubt that multiple provisions of the comprehensive plan refer to the well-known traffic problems in Ogunquit there is no requirement that the Town, in its zoning ordinance, adopt a specific remedy that is to the developer's liking. The Zoning Ordinance at Section 8.13.A.3 addresses traffic issues in a manner, among many possible options, that is "in basic harmony", with the comprehensive plan. *F.S. Plummer Co. v. Town of Cape Elizabeth*, 612 A.2d 856, 859 (Me. 1992). The failure, if there is one, of the Town to more aggressively address traffic through other non-zoning actions does not in itself invalidate the zoning provisions dealing with traffic if those provisions are in basic harmony with the comprehensive plan. See *Bog Lake Company v. Town of Northfield,* 2008 ME 37 (Feb. 28, 2008) for the principles governing limited review of legislative actions taken by municipalities and ¶15 discussing comprehensive plans.

The next argument is that the use of the word "nearby" in Section 8.13 produces an ordinance that is not sufficiently defined thus constituting an unconstitutional delegation of legislative authority, See *Kosalka v. Town of Georgetown*, 2000 ME 106, ¶11, 752 A.2d 183, 6 and its determination that a duty to "conserve natural beauty" was far too imprecise and failed to "furnish a guide which will enable those to whom the law is to be applied to reasonably determine their rights." *Kosalka* at ¶11, quoting *Stucki v. Plavin*, 291 A.2d 508, 510 (Me. 1972).

3

In this case there is no question that the developer knows what must be done to obtain the requested permit. The argument is that the developer might not know where the requirements applied. Here the "nearby" intersection is the intersection of Berwick Road and Route 1, some 1.5 miles or so away, which was the focus of the initial application, administrative decision, court appeals and the current application, proceeding before the Selectmen, planning board decision and Superior Court appeal. It might be advisable to define "nearby" in feet or miles but it is not necessary to do so particularly here. The developer knew what must be done and what intersection needed attention.

The third argument is that Section 8.13.A.3 constituted an illegal *de facto* building moratorium. The developer is correct that any moratorium must be both limited in time and follow specified procedures. See 30-A M.R.S.A. §4356. In this case the decisions of the Selectmen regarding road or traffic flow modifications and of the Planning Board do not constitute a moratorium. They are decisions based on a specific application which resulted in denials for the specific reason that the application did not meet the ordinance provisions. Because a project, even a larger scale project, is rejected does not mean, without more, than a moratorium in disguise has been enacted.

The final argument focuses on the requirement that the applicant "improve the street or intersection capacities or level of service ...". In order to do this the Selectmen must ultimately assist the developer by granting the required approval either if the proposed solution constitutes a decision to "lay out, alter or widen town ways." 23 M.R.S.A. §3022 or involves amendments to traffic ordinances, 30-A M.R.S.A. §3009.

In this case the developers suggested eight possible methods of meeting the requirements of Section 8.13.A.3 and focused on two of them. Eventually the developer presented its case to the Selectmen who declined to adopt any of the proposals. Once

4

that happened the Planning Board denied the subdivision approval application for failure to comply with Section 8.13.A.3.

While there is a provision at 23 M.R.S.A. §3029 which allows an appeal from the "action or nonaction of municipal officers" to the Superior Court there was no petition to "lay out, alter or widen town ways" which is necessary before an appeal can be taken. Likewise, I find no basis under any other statute or "otherwise available by law", Rule 80B(a), M.R.Civ.P. to permit Superior Court review under Rule 80B of the Selectmen's decision to not approve any proposed traffic mitigation proposal. The Selectmen were free, at least under Rule 80B, to determine, on a principled basis or otherwise, that none of the proposals were satisfactory. That decision, in the context of this portion of this case, is not reviewable by the Superior Court.

Since none of the arguments for a reversal of the Planning Board decision were successful the Planning Board's denial stands and it is not necessary to examine the alternative arguments for denial suggested in Mr. Bodack's appeal.

The entries are:

In Count I of AP-07-22 the decision of the Ogunquit Planning Board of July 24, 2007 denying the application of Ogunquit Village Estates, LLC for subdivision preliminary plan approval is affirmed.

Counts II through V of AP-07-22 shall proceed consistent with the prior procedural order. The plaintiff shall contact the judicial secretary in Portland to seek to arrange a judicial settlement conference.

In AP-07-38 the complaint is dismissed as moot.

Dated:        March 6 , 2008

AP-07-022

| | |
|---|---|
| Durward Parkinson, Esq. | Mark Franco, Esq. |
| BERGEN & PARKINSON | THOMPSON & BOWIE |
| 62 PORTLAND RD | PO BOX 4630 |
| KENNEBUNK ME  04043-6658 | PORTLAND ME  04112-4630 |
| for: Plaintiff | for: Defendant |

Paul A. Fritzsche
Justice, Superior Court

AP-07-038

| | | |
|---|---|---|
| John C. Bannon, Esq. | JOHN C. BANNON, ESQ. | PATRICK J. SCULLY, ESQ. |
| MURRAY PLUMB & MURRAY | MURRAY PLUMB & MURRAY | BERNSTEIN SHUR SAWYER & NELSC |
| PO BOX 9785 | PO BOX 9785 | PO BOX 9729 |
| PORTLAND ME  04104-5085 | PORTLAND ME  04104-5085 | PORTLAND ME  04104-5029 |
| for: Intervenor - William Bodack | for: William Bodack | for: Defendant |