STATE OF MAINE                                   SUPERIOR COURT
KENNEBEC, ss.                                    CIVIL ACTION
                                                 Docket No. AP-09-49
                                                 _NM - KEN  5/4/2010_


KATHLEEN PARKER,
et. al.,

            Plaintiffs

v.                                               DECISION AND ORDER

TOWN OF WINTHROP,

            Defendant


Before the court is a petition for review of government action pursuant to

M.R. Civ. P. 80B.[1]   The plaintiffs challenge two decisions of the Town of

Winthrop Zoning Board of Appeals (ZBA) dated 9/9/09: the ZBA denied the

plaintiffs' application to rebuild a bunkhouse or construct a tent platform on

Frog Island (case #307) and denied the plaintiffs' application for a variance from

applicable dimensional requirements (case #306). (R. at 68, 70.).

The plaintiffs[2] argue that the ZBA erred by (1) reviewing the initial denials

by the Codes Enforcement Officer (CEO) under a de novo review rather than an

appellate standard of review; (2) concluding that the remnants of a bunkhouse

located on the property do not constitute a nonconforming structure, which can

be replaced under § 2.3.3 of the Town of Winthrop Zoning Ordinance (the

Ordinance); (3) concluding that a proposed tent platform is subject to shoreline

---

[1] The plaintiffs filed a 24-page, single-spaced brief and an 11-page, single-spaced reply
brief, contrary to the provisions of M.R. Civ. P. 7(f).

[2] The plaintiffs appear pro se. Petitioner Dennis Tompkins acted as the representative at
the municipal hearing and appears to have served as the contact for the plaintiffs in this
matter.

setback requirements; (4) not considering the plaintiffs' request to build a temporary screen house on the property; and (5) denying a variance request either to rebuild the bunkhouse or build a tent platform. For the following reasons, the decision of the ZBA in the administrative appeal is affirmed and the variance appeal is remanded for further proceedings consistent with this decision.

Factual and Procedural Background

Plaintiffs Kathleen Parker and her brother Spelts H. Parker, Jr. purchased Frog Island on Cobbosseecontee Lake in Winthrop, Maine in March 2009. (R. at 11.). Frog Island measures approximately 205 feet north to south and 83 feet east to west at its widest point. (R. at 3.). The entire island falls within the Ordinance's definition of a shoreland zoning district and is subject to a 100-foot shoreline setback requirement. (Ord. § 3.3.).

At the time of the purchase, the property included a concrete hearth with brick fireplace and chimney. (R. at 3, 9.). The fireplace was functional in May 2008, but was damaged between June 2008 and April 2009. (Id. at 9, 22, 63.). The site of the fireplace includes concrete footers that are partially buried in the ground and that show the former location of a bunkhouse. (Id. at 3.). The building has not been listed on tax records or taxed since sometime in the 1960s. (Id. at 13, 57.).

The plaintiffs, appearing through plaintiff Dennis Tompkins, Kathleen Parker's husband and co-mortgagor on the property, applied to the Winthrop CEO for a permit to build a bunkhouse on the original footprint on 5/5/09. (Id. at 1.). The CEO denied this application on 5/11/09. (R. at 13-14.). The plaintiffs next applied for a permit to rebuild the fireplace and construct a wooden tent

platform. (Id. at 15.). The CEO issued a permit to rebuild the fireplace but denied the application to construct a wooden tent platform on 6/3/09. (Id. at 15, 24-25.).

The plaintiffs appealed the CEO's decision to the ZBA and filed a variance appeal, in which they requested a variance from the 100-foot setback requirement. (Id. at 26, 29.). A public hearing was held on 9/9/09. The ZBA affirmed the CEO's denials and denied the plaintiffs' variance request. (Id. at 68-72.). The plaintiffs' Rule 80B complaint, joined with an independent claim for declaratory relief, was filed with this court on 10/9/09.[3]

Standard of Review

On an appeal pursuant to M.R. Civ. P. 80B, the record is examined to determine if the Board abused its discretion, committed errors of law, or made findings that are not supported by substantial evidence in the record. Tinsman v. Town of Falmouth, 2004 ME 2, ¶ 8, 840 A.2d 100, 103. The substantial evidence standard requires the court to "examine the entire record 'to determine whether on the basis of all the testimony and exhibits before the [Board] it could fairly and reasonably find the facts as it did.'" Seven Islands Land Co. v. Maine Land Use Regulation Comm'n, 450 A.2d 475, 479 (Me. 1982) (quoting In re Maine Clean Fuels, Inc., 310 A.2d 736, 741 (1973)). "[T]he fact that two inconsistent conclusions can be drawn from the evidence does not mean that a Board's finding is unsupported by substantial evidence." Conservation Law Found., Inc. v. Town of Lincolnville, 2001 ME 175, ¶ 6, 786 A.2d 616, 619. To prevail on appeal, the plaintiffs must demonstrate "not only that the Board's findings are unsupported by record evidence, but also that the record compels contrary

---

[3] The plaintiffs' motion for trial was denied on 12/28/09.

3

findings." Total Quality, Inc. v. Town of Scarborough, 588 A.2d 283, 284 (Me. 1991). The burden of persuasion rests with the plaintiffs, who seek to overturn the Board's decision. Mack v. Mun. Officers of Town of Cape Elizabeth, 463 A.2d 717, 720 (Me. 1983).

Discussion

### 1. Role of the Winthrop Zoning Board of Appeals

The ZBA reviewed the CEO's denials of the plaintiffs' applications to rebuild the bunkhouse and to build a tent platform in a de novo hearing rather than limiting itself to the materials before the CEO. (Id. at 73-109.). The plaintiffs argue that the Ordinance does not provide for de novo review and refers to these matters as "administrative appeals." (Ord. § 5.8.2.3(1).); Stewart v. Town of Sedgewick, 2000 ME 157, ¶ 4, 757 A.2d 773, 775 ("If the Board of Appeals acted as a tribunal of original jurisdiction, that is, as factfinder and decision maker, we review its decision directly. If, however, the Board acted only in an appellate capacity, we review directly the decision of the Planning Board, or other previous tribunal, not the Board of Appeals.") (internal citations omitted).

The Law Court has held that a board must conduct a hearing de novo unless the ordinance "explicitly directs otherwise[.]" Id. at ¶ 7, 757 A.2d at 776; 30-A M.R.S. § 2691(3)(D). The operative language of the Ordinance in this case provides that the ZBA "shall hear and decide [administrative appeals] where it is alleged there is an error in any order, requirement, decision or determination by the Code Enforcement Officer in the administration of the Ordinance." (Ord. § 5.8.2.3(1).). The Ordinance does not direct the ZBA to consider administrative appeals solely on the record before the CEO. The use of the phrase "hear and decide" in the Ordinance implies that the ZBA is to take evidence and make

4

factual decisions on that evidence. Id. The phrase "hear and decide" is also used to describe the ZBA's power to hear variance appeals, which are matters in which the ZBA has original jurisdiction. (Id. at § 5.8.2.3(2).); see also Stewart, 2000 ME 157, ¶ 11, 757 A.2d at 777 (a board can act as an "appellate" body yet undertake a de novo review of an application on appeal).

### 2. Application to Rebuild the Bunkhouse

The plaintiffs next argue that the ZBA erred by concluding that the original bunkhouse did not qualify under section 2.3.3[4] of the Ordinance as a non-conforming structure that can be rebuilt because the structure itself did not exist within one year of the date the plaintiffs applied for a permit. (R. at 68.). Section 2.3.3 allows a non-conforming structure to be rebuilt or replaced if, among other requirements, the structure is "removed, damaged, or destroyed by more than 50 percent of the market value" and the permit is obtained within one year of the date of the incident.

The ZBA did not specify in its decision whether the bunkhouse was removed, damaged, or destroyed, but stated that the incident clearly occurred more than one year prior to the application for a permit. (R. at 68.) ("the original

---

[4] Section 2.3.3 provides in full:

A non-conforming structure which is located less than the required setback from a water body, stream, or freshwater wetland and is removed, damaged, or destroyed by more than 50 percent of the market value of the structure prior to the incident may be reconstructed or replaced provided that a permit is obtained within one year of the date of said incident and provided that such reconstruction or replacement is in compliance with the water setback requirement to the greatest practical extent as determined by the Planning Board using the criteria in paragraph 2.3.2. above, and considering the physical condition and type of foundation present. If the amount of damage is 50 percent or less, the structure may be reconstructed in place with a building permit from the Codes Enforcement Officer. In no case shall a structure be reconstructed or replaced so as to increase its non-conformity.

(emphasis added).

bunkhouse was a non-conforming structure and did not meet the criteria for the replacement of an existing non-conforming structure because the building itself has not existed for many years and had lost the grandfathering status of the original structure.") (internal quotations omitted).

The plaintiffs argue that the bunkhouse was not "destroyed" until the vandalism that occurred between May 2008 and April 2009. Because the chimney, hearth, and footers "clearly represent a substantial, integral part of the old bunkhouse structure[,]" they argue, the bunkhouse was eligible for replacement for one year following the vandalism under the section 2.3.3 of the Ordinance. (Pls.' Br. at 8.).

Interpretation of the language of a local ordinance is a question of law that is reviewed de novo. Isis Dev., LLC v. Town of Wells, 2003 ME 149, ¶ 3, 836 A.2d 1285, 1287. That interpretation is guided by the "ordinance's specific object and its general structure." Lewis v. Town of Rockport, 1998 ME 144, ¶ 11, 712 A.2d 1047, 1049. "The underlying policy of zoning is to gradually eliminate nonconforming structures and uses." Lewis v. Maine Coast Artists, 2001 ME 75, ¶ 26, 770 A.2d 644, 653.

The plaintiffs theorize that although a substantial part of the non-conforming structure had been destroyed, as long as the remaining portion of the structure is still somehow usable, the one-year limit on reconstructing the entire building is tolled until the remaining portions are removed or destroyed. This interpretation is not compelled by the plain language of the Ordinance and is contrary to the Ordinance's policy of phasing out non-conforming structures. The "structure" on the plaintiffs' property was a chimney; the CEO granted a permit for reconstruction. (R. at 15.). The event necessitating reconstruction of

6

the bunkhouse occurred years before the plaintiffs filed their application for a permit. (Id. at 68.).

### 3. Application to build a wooden tent platform

The plaintiffs next argue that the ZBA erred when it denied their application to build a tent platform at the site of the chimney. (Id. at 68.). The parties agree that this application was for a new structure on the existing land rather than any type of reconstruction or expansion of structures already existing, and they further agree that the Ordinance generally prohibits such structures within the 100-foot setback. (Pl.'s Br. at 11.); (Def.'s Br. at 7.); (Ord. § 3.3(E)(4).).

The parties disagree regarding whether the platform should be exempt from the setback requirements because "individual private campsites," which are allowed within the buffer area when permitted by the CEO, are defined to include tent platforms. (Ord. §§ 3.3(B)(7)(private campsites allowed by permit from CEO), 6.2 (defining "individual private campsites").). The plaintiffs argue that because tent camping has "regularly occurred – both before and since adoption of the Ordinance's shoreland zoning rules," the area on Frog Island where tent camping has occurred constitutes a grandfathered individual campsite that may include a tent platform. (Pls.' Br. at 11.).

Assuming that the site actually does constitute a grandfathered individual campsite, that particular use of the site did not include a tent platform and construction of the platform would constitute an expansion of a non-conforming use. Contrary to the plaintiffs' argument, the fact that an individual private campsite "may include" a tent platform does not imply that the owner of a

7

legally non-conforming campsite may expand his use to the fullest extent of the definition as a matter of right.

### 4. Application to build a temporary screen house shelter

The plaintiffs next argue that the ZBA erred by declining to address their request to build a temporary screen house that would exist no more than 120 days per calendar year.

As an initial matter, and as the defendant notes, this matter was not raised in the plaintiffs' original application. (R. at 15, 22-23.) (Def.'s Br. at 9.). In the plaintiffs' appeal application, the plaintiffs requested that the ZBA permit the plaintiffs "to allow construction and seasonal use (up to 120 days/year) of a wood-framed shelter on the platform, until it's dismantled after a maximum of 120 days use each year." (R. at 26.) (emphasis added).

Even if the court considers the denial of the application to build a screen house, that denial would still be proper because no permit is required to build a temporary screen house. (Ord. § 4.2.2.9 (allowing a temporary shelter to remain on an individual private campsite for up to 120 days).). The plaintiffs were entitled to build such a temporary structure that complies with the requirements of the Ordinance.

### 5. Application for a variance to build either a bunkhouse or wooden tent platform

Finally, the plaintiffs contend that the ZBA erred when it denied the request for a variance because the plaintiffs failed to demonstrate "undue hardship." (R. at 71.). The ZBA may grant a variance "where a relaxation of the terms of this Ordinance would not [be] contrary to the public interest and where

8

a literal enforcement of this Ordinance would result in undue hardship." (Ord. §

5.8.2.3(2).). The term "undue hardship" is defined to mean:

a) That the property in question cannot yield a reasonable return unless a variance is granted;

b) That the need for a variance is due to the unique circumstances of the property and not to the general conditions of the neighborhood;

c) That the granting of the variance will not alter the essential character of the locality, adversely affect adjoining or nearby properties, nor endanger the public health, safety and welfare, and,

d) That the hardship is not the result of action taken by the applicant or prior owner.

(Id.). The ZBA concluded that the plaintiffs failed to demonstrate that the

property cannot yield a reasonable return unless a variance is granted and that

the variance not would alter the essential character of the locality, adversely

affect adjoining or nearby properties, nor endanger the public health, safety and

welfare. (R. at 71.).

The defendant initially requests that the court consider that the above

standard requires, in addition to the demonstration of undue hardship, that the

grant of a variance not be contrary to the public interest. (Def.'s Br. at 10.); (Ord.

§ 5.8.2.3.(2).). Although the public interest concern might be a proper ground for

the denial in this case, the ZBA disposed of this application based on its

conclusion that undue hardship was not established. (Id. at 71.). Accordingly,

the court cannot "substitute its judgment for that of the municipal body" and

must review the conclusions that were actually drawn by the ZBA. Aydelott v.

City of Portland, 2010 ME 25, ¶ 17, __ A.2d __.

The decision contains eleven "findings of fact." (R. at 70-71.). These

findings of fact, however, summarize the procedural history of the case. (Id.).

9

The "Conclusion" section of the decision simply restates the language of §
5.8.2.3(2) of the Ordinance.[5] (Id. at 71.).

Although a municipal body is not required to issue a comprehensive
decision restating the entire factual record, sufficient written factual findings
must be issued to allow meaningful judicial review. See Bodack v. Town of
Ogunquit, 2006 ME 127, ¶ 14, 909 A.2d 620, 625 ("written factual findings must
be sufficient to show the applicant and the public a rational basis of [the board's]
decision."); Comeau v. Town of Kittery, 2007 ME 76, ¶ 13, 926 A.2d 189, 192-
193("Because we are unable to discern what findings the board made, we cannot
proceed with a judicial review of its decision"). The Law Court has, however,
stated that there are circumstances in which a Board's decision may be deemed
based on implicit findings in the record. Bodack, 2006 ME 127, ¶ 14 n.7, 909 A.2d
at 625 (citing Forester v. City of Westbrook, 604 A.2d 31, 33 (Me. 1992)).

Precedent is unclear regarding the specificity required for factual findings.
Riverwatch v. City of Auburn, 2008 Me. Super. LEXIS 200, *11 (November 17,
2008) (Wheeler, J.). The standard necessarily requires something more than

---

[5]  Specifically, the conclusion section of the decision reads:
   1.   The property in question **can** yield a reasonable return unless a
        variance is granted.
   2.   The need for a variance **is due** to the unique circumstances of the
        property and not to the general conditions of the neighborhood.
   3.   The granting of the variance **will** alter the essential character of
        the locality, adversely affect adjoining or nearby properties, nor
        [sic] endanger the public health, safety and welfare.
   4.   The hardship **is not** the result of action taken by the applicant or a
        prior owner.
(R. at 71.) (emphasis in original).

10

summarizing the procedural history of the dispute and quoting the language in the applicable regulation.[6]

The entry is

> The Decision of the Town of Winthrop Zoning Board of Appeals is AFFIRMED in Case #307, the Administrative Appeal.
>
> Case #306, the Variance Appeal, is REMANDED for further findings consistent with this Decision and Order.

Date: May 4, 2010

Nancy Mills
Justice, Superior Court

---

[6] Although the record of the deliberations reflects some individual observations by the members of the ZBA, the court cannot speculate about whether these observations played a part in the final decision. (R. at 106-09.)

Date Filed __10/9/09__ __Kennebec__ Docket No. __AP-09-49__

County

Action __Review of Governmental Action__

80B

J. Mills

Kathleen Parker, et al. VS. Town of Winthrop

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Kathleen Parker - Pro Se<br>Spelts H. Parker, Jr. - Pro Se<br>Dennis W. Tompkins - Pro Se<br>147 Hardscrabble Road<br>Litchfield, ME 04350 | Amanda A. Meader, Esq.<br>Lee K Bragg, Esq.<br>PO Box 5057<br>Augusta, ME 04332-5057 |

| Date of Entry | |
|---|---|
| 10/17/09 | Complaint For Review Of Governmental Action and Request For Declaratory Judgment, filed 10/9/09. s/Kathleen Parker, Pro Se s/Spelts H. Parker, Jr., Pro Se s/Dennis W. Tompkins, Pro Se |
| 10/17/09 | Notice And Briefing Schedule mailed to parties. |
| 10/22/09 | Motion To Specify Future Course Of Proceedings, Proposed Order, filed 10/19/09. s/Parker, Pro Se s/Tompkins, Pro Se |
| 10/28/09 | Notice of Appearance, filed 10/26/09. s/Meader, Esq. s/Bragg, Esq. |
| 11/6/09 | Return of Service, Service on Terri Williams for Town of Winthrop, filed 11/5/09. |
| 11/13/09 | Answer To Plaintiffs' Complaint, filed 11/9/09. s/Meader, Esq. |
| 11/20/09 | Letter from the court mailed to all parties indicating the Proposed Order filed with Motion And Incorporated Memorandum Of Law on October 19, 2009 by Plaintiffs is insufficient. |
| 11/24/09 | Plaintiffs' Memorandum In Opposition To Defendant's Affirmative Defenses Proffered In Defendant's Answer To Plaintiffs' Complaint, filed 11/18/09. s/Kathleen Parker, Pro Se s/Spelter H. Parker, Jr., Pro Se s/Dennis W. Tompkins, Pro Se |
| 12/3/09 | Plaintiff's Revised Motion For Court To Specify Future Course Of Proceedings And Incorporated Memorandum Of Law, Request For Hearing, And Notice Of Hearing, with Proposed Order, filed 11/30/09. s/Kathleen Parker, Pro Se s/Spelts H. Parker, Jr., Pro Se s/Dennis W. Tompkins, Pro Se. |
| 12/18/09 | Motion In Opposition To Plaintiff's Revised Motion For Court To Specify Future Course Of Proceedings And Incorporated Memorancum Of Law, Request For Hearing, And Notice Of Hearing. s/Meader, Esq. |

| Date of Entry | |
|---|---|
| 12/31/09 | ORDER on Motion To Specify Future Course Of Proceedings, Mills, J. (12/28/09)<br>Motion for trial denied for failure to comply with Rule 80B(i).<br>Copy to Plaintiffs and Attorney Meader. |
| 12/31/09 | ORDER on Plaintiffs' Revised Motion For Court To Specify Future Course Of Proceedings, Mills, J. (12/28/09)<br>Revised motion for trial denied for failure to comply with Rule 80B(i) and as untimely. M.R.Civ.P. 80B(i).<br>Copy to Plaintiffs and Attorney Meader. |
| 12/31/09 | Notice And Briefing Schedule sent to Plaintiffs and Attorney Meader. |
| 2/9/10 | Plaintiffs' Brief, filed. s/Kathleen Parker, Pro Se s/Spelts H. Parker, Jr., Pro Se s/Tompkins, Pro Se (w/3-ring binder of exhibits) |
| 3/11/10 | Defendant's Brief, filed 3/10/10. s/Meader, Esq. |
| 3/18/10 | Plaintiffs' Reply Brief. s/Kathleen Parker, Pro Se s/Spelts H. Parker, Jr., Pro Se s/Dennis Tompkins, Pro Se |
| 5/4/10 | DECISION AND ORDER, Mills, J.<br>The Decision of the Town of Winthrop Zoning Board of Appeals is AFFIRMED in Case #307, the Administrative Appeal.<br>Case #306, the Variance Appeal, is REMANDED for further findings consistent with this Decision and Order.<br>Copy to Plaintiffs and Attorney Meader.<br>Copy to Repositories. |

Docket No. _____