861 A.2d 881

CITY OF PITTSBURGH

v.

COUNTY OF ALLEGHENY, Department of Administrative Services, Election Division and Pittsburgh Firefighters, Local No. 1 and Joseph King

Petition of Pittsburgh Firefighters, Local No. 1 and Joseph King.

Supreme Court of Pennsylvania.

Oct. 27, 2004.

As Amended Oct. 28, 2004.

Dissenting Opinion Filed Oct. 29, 2004.

*AMENDED ORDER*

PER CURIAM.

**AND NOW,** this 28th day of October, 2004, the Order entered October 27, 2004 is amended to read as follows:

The Petition for Allowance of Appeal is GRANTED and the Order of the Commonwealth Court is AFFIRMED. 25 P.S. § 2936(b).

Justice NEWMAN dissents.   Dissenting Statement to follow.

Justice SAYLOR dissents.

Justice BAER dissents.

Justice NEWMAN dissenting.

I agree with my colleagues that it was appropriate for this Court to grant the Petition for Allowance of Appeal in the instant matter.   However, I respectfully dissent from the portion of the Per Curiam Order that affirms the decision of the Commonwealth Court.

## *Facts and Procedural History*

The Pittsburgh Firefighters, Local No. 1 (Local No. 1) circulated petitions to place the following question on the official ballot for the November 2, 2004 General Election:

## QUESTION

In order to maintain adequate Health and Safety for all residents, including seniors, children, and adults in the City of Pittsburgh, The National Fire Protection Association's NFPA 1710 Standards for Organization and Deployment of Fire Suppression Operations shall be a mandatory standard to be implemented and followed by the City of Pittsburgh and the Pittsburgh Fire Bureau.[1]

On August 2, 2004, Joseph E. King (King), President of Local No. 1, sent petitions containing 24,483 signatures to the Director of the Allegheny County Election Division.[2]   The same day, the Election Division informed the City Clerk and Local No. 1 that it had conditionally accepted the petitions,

1. The NFPA 1710 standards outline minimum requirements for fire suppression services, including staffing.   http://daily.iaff.org/education/learningmods/Intro1710/Introduction_to_NFPA_1710.htm   (last visited October 27, 2004).

2. In order for the question to be placed on the ballot, the petitions had to contain 8,500 signatures, which is ten percent of the number of electors voting for Governor in the last gubernatorial general election in the municipality.   53 Pa.C.S. § 2943(a).

subject to approval from the Allegheny County Law Department (Law Department).   On August 4, 2004, the Election Division informed Local No. 1 that the Law Department had approved the following question for placement on the November 2, 2004 ballot:

### PITTSBURGH HOME RULE CHARTER AMENDMENT SPECIAL ELECTION QUESTION

Shall the City of Pittsburgh Home Rule Charter be amended to provide that the Pittsburgh Fire Bureau shall implement and follow the National Fire Protection Association's 1710 Standards for Organization and Deployment of Fire Suppression Operations?

On August 10, 2004, the City filed objections to the referendum with the Court of Common Pleas of Allegheny County (trial court).   The City alleged that the question contained in the petition was invalid on its face because it did not provide notice of a Home Rule Charter amendment, and the material modifications made by the Election Division were beyond its authority, and therefore impermissible.   King and Local No. 1 sought permission to intervene, which the trial court granted. On August 19, 2004, the trial court overruled the City's objections related to the procedures by which the question was placed on the ballot.[3]

The City recognized in its Objections that the only time a referendum is permitted is to amend the Home Rule Charter. Accordingly, the trial court rejected the City's argument that the signers could have thought the question proposed an ordinance, because an ordinance may not be enacted by referendum.   It also rejected the City's position that the signers might have thought that the question was advisory.   In light of the fact that the question specifically states that the NFPA 1710 Standards "shall be mandatory," the signers could not have viewed it as advisory.

3.   The City raised additional objections related to the validity of the proposed Home Rule Charter Amendment, which the trial court dismissed without prejudice in the event the referendum passes.

Section 2944 of the Home Rule Charter and Optional Plans Law, 53 Pa.C.S. § 2944, provides, "The county board of elections shall frame the question to be placed on the ballot." 53 Pa.C.S. § 2944. The trial court held that since it should have been apparent that the referendum intended to amend the Home Rule Charter, the Board of Elections acted properly when it framed the question as an amendment to the Home Rule Charter.

The City filed an appeal to the Commonwealth Court, which reversed the trial court. The Commonwealth Court noted that Section 2943(a) of the Home Rule Charter and Optional Plans Law provides that petitions for a referendum proposing an amendment "shall be in the manner and subject to the provisions of the election laws which relate to the signing, filing and adjudication of nomination petitions...." 53 Pa. C.S. § 2943(a). Section 976 of the Pennsylvania Election Code provides that no nomination petition "shall be permitted to be filed if: (a) it contains material errors or defects apparent on the face thereof ... or (b) it contains material alterations made after signing without the consent of the signers...." 25 P.S. § 2936. The Commonwealth Court noted that the original referendum question presented in the petitions did not inform signers that the result of the question would be an amendment to the Home Rule Charter. However, as framed by the Law Department, the question indicated that the City's Home Rule Charter would be amended. The Commonwealth Court concluded that this was a material alteration of the original referendum question "made after signing without consent of the signers," and thus violated Section 976 of the Election Law.

## Discussion

I believe that the trial court did not abuse its discretion or err as a matter of law when it determined that the question, as framed by the Law Department, should appear on the November 2, 2004 General Election ballot.

Article 9, Section 2 of the Pennsylvania Constitution provides, "Adoption, amendment or repeal of a home rule charter

shall be by referendum." Subchapter C of the Home Rule Charter and Optional Plans Law, 53 Pa.C.S. §§ 2941—2944, establishes procedures for placing a referendum on the ballot. Section 2944 requires that "the question shall be submitted to the voters in the same manner as other questions are submitted under the Pennsylvania Election Code." Accordingly, when reviewing this matter we must be mindful of the fact that the Election Code should be liberally construed. *In re Nomination of Flaherty*, 564 Pa. 671, 770 A.2d 327, 331 (2001).

The question, as circulated on the petition, informed the signers that if approved, the City of Pittsburgh would be required to implement and follow NFPA 1710. In the Objections filed on August 10, 2004, the City admits that the referendum process can only amend the Home Rule Charter, and cannot enact an ordinance or a resolution. City's Objections to Question for Referendum at 9. Local No. 1 asserts that "a question to be placed on a special ballot requiring the City to 'implement' and 'follow' a 'mandatory standard' could not possibly have any other legal meaning" than to seek to amend the Home Rule Charter. Petition for Allowance of Appeal at 9. The trial court agreed with this conclusion. However, the Commonwealth Court determined that failure to inform the signers that adoption of the referendum would lead to amendment of the Home Rule Charter was a fatal defect. I disagree. Considering that the sole purpose of a referendum is to amend the Home Rule Charter, and the question clearly stated that adoption of the referendum would require mandatory compliance by the City with NFPA 1710 standards, I do not believe that the question misled the signers as to the purpose and effect of the question.

It is unambiguous that pursuant to Section 2944, the Board had the duty to "frame the question to be placed on the ballot." The Election Board properly carried out this obligation by framing the question in a manner that did not substantively change the question presented on the petition. The Board merely rephrased the portion of the question averring that NFPA 1710 "shall be a mandatory standard to be implemented and followed by the City of Pittsburgh and

the Pittsburgh Fire Bureau" with language providing that the "City of Pittsburgh Home Rule Charter be amended to provide that the Pittsburgh Fire Bureau shall implement and follow NFPA 1710."

As noted previously, the statutorily applicable mechanism requires that a ballot question be circulated for signatures, and, if the requisite signatures are obtained, the subsequent submission of the issue to the Election Division for rephrasing into a final ballot question by the applicable Law Department. The ordering of these statutorily imposed steps almost guarantees a variance between the circulated language and the question as finally framed. A hypertechnical comparison between the two will frustrate the constitutionally mandated and protected right of the people to amend their applicable home rule charters. I believe that is what occurred here. Both the circulated and finally phrased ballot questions have the same legal effect and require the City and the Pittsburgh Fire Bureau to take the same action. Under these facts, it is inconsistent with the language and intent of the Constitution and the statutory scheme to disallow this ballot question.

## Conclusion

Because the trial court did not abuse its discretion or err as a matter of law, I respectfully dissent from the Order of my colleagues that affirms the decision of the Commonwealth Court. I would reverse the Order of the Commonwealth Court and reinstate the Order of the trial court.

Justices SAYLOR and BAER join this dissenting statement.