STATE OF MAINE                                      BUSINESS & CONSUMER DOCKET
CUMBERLAND, ss.                                     DOCKET NO. BCD-AP-2018-05


FRIENDS OF LAMOINE, et al.,              )
                                         )
            Plaintiffs,                  )
                                         )
        v.                               )
                                         )       ORDER ON HAROLD MACQUINN,
TOWN OF LAMOINE,                         )       INC.'S MOTION FOR
                                         )       RECONSIDERATION OF AMENDED
            Defendant.                   )       JUDGMENT
                                         )
                                         )
HAROLD MACQUINN, INC.,                   )
                                         )
            Party in Interest.           )


On June 17, 2019, this Court entered an order (the "Order") granting in part and

denying in part the motion for reconsideration or to alter or amend the judgment filed by

Party in Interest Harold MacQuinn, Inc. ("MacQuinn"). Although the Court substantively

amended its original order based on valid points raised in MacQuinn's motion, the revised

analysis did not change the Court's ruling in its original order granting the appeal in this case

brought by Plaintiffs Friends of Lamoine and Jeffrey Dow, as Trustee for the Tweedie Trust

("Friends") pursuant to M.R. Civ. P. 80B—the practical result of which was to prevent

MacQuinn from expanding an existing gravel pit in the Town of Lamoine (the "Town").

MacQuinn has now moved for reconsideration of the Order pursuant to M.R. Civ. P.

59(e), raising new arguments directed specifically at the Court's revised analysis. The Court

considers the motion on its merits because it raises arguments that are unique to the revised

analysis in the amended judgment and thus could not have been presented previously. See

1

M.R. Civ. P. 7(b)(5). Nonetheless, for the reasons explained below, the Court denies the motion.[1]

In its revised analysis, the Court affirmed the Planning Board's denial of MacQuinn's application under Lamoine's Site Plan Review Ordinance ("SPRO") based on its finding that MacQuinn's application for a permit under the SPRO presented insufficient evidence that the proposed expansion would (1) "preserve the landscape in its natural state insofar as practicable by minimizing tree removal [and] disturbance of soil" and (2) "maintain and preserve . . . the isolated wetland to the maximum extent." (Pl.'s Ex. C-8.)[2] The Court further concluded that this finding was supported by substantial record evidence. MacQuinn argues that there is not substantial record evidence to support either of the Planning Board's explicit findings, and urges the Court to reconsider its conclusion to the contrary in the Order.

"Substantial evidence is evidence that a reasonable mind would accept as sufficient to support a conclusion." *Id.* ¶ 12 (quoting *Sproul v. Town of Boothbay Harbor*, 2000 ME 30, ¶ 8, 746 A.2d 368). "The possibility of drawing two inconsistent conclusions from the evidence does not make the evidence insubstantial." *Sproul v. Town of Boothbay Harbor*, 2000 ME 30, ¶ 8, 746 A.2d 368 (citing *Veilleux v. City of Augusta*, 684 A.2d 413, 415 (Me. 1996)); *see also Herrick v. Town of Mech. Falls*, 673 A.2d 1348, 1349-50 (Me. 1996). Furthermore, the party challenging the sufficiency of the evidence "has the burden of showing that the record evidence *compels* a contrary conclusion." *Tarason v. Town of S. Berwick*, 2005 ME 30, ¶ 6, 868 A.2d 230 (citing *Twigg v. Town of Kennebunk*, 662 A.2d 914, 916 (Me. 1995); *Boivin v. Town*

---

[1] The period to oppose MacQuinn's motion has not yet expired and Friends has not yet filed an opposing memorandum. However, under M.R. Civ. P. 7(b)(5), "[t]he court may in its discretion deny a motion for reconsideration without hearing and before opposition is filed."

[2] Under its revised analysis, it is unnecessary for the Court to rely on implicit findings regarding Cousins Hill, which had formed the basis for the Court's order on Friends' appeal prior to MacQuinn's first motion for reconsideration.

*of Sanford*, 588 A.2d 1197, 1199 (Me. 1991)) (emphasis added). *See also Herrick v. Town of Mech. Falls*, 673 A.2d 1348, 1349 (Me. 1996). In other words, to vacate the Planning Board's findings, MacQuinn "must demonstrate that *no competent evidence* supports the Planning Board's conclusions." *Adelman v. Town of Baldwin*, 2000 ME 91, ¶ 12, 750 A.2d 577 (citing *Twigg v. Town of Kennebunk*, 662 A.2d 914, 916 (Me. 1995)) (emphasis added).

MacQuinn systematically argues why the record evidence cited by the Court and relied upon by the Planning Board *could* support a finding that the proposed expansion zone would not endanger the isolated wetland, but such an argument is misplaced on appeal, where the Court cannot substitute its judgment for that of the Planning Board. For example, in arguing that the Planning Board—and the Court—may have misread the map located at page 615 of its application, MacQuinn concedes that the proposed expansion area comes within "a little under 600 feet" of "Wetland C," the westernmost of the four wetlands within the vicinity of the proposed expansion, and partially surrounds the wetland in an L-shape. Whether extraction in the expansion area at such a distance preserves the wetland "to the maximum extent" is classic factfinding entrusted to the Planning Board under Lamoine's SPRO. The Court cannot second-guess the Planning Board's determination. In other words, even this map is competent evidence that the Planning Board could have relied upon in making its finding: it depicts a proposed extraction area that approaches and partially surrounds an isolated wetland identified by MacQuinn in its application.

MacQuinn points out that the wetland is located within land owned by MacQuinn for which it has already received SPRO approval for gravel extraction, as depicted on the map, and argues that this demonstrates the "absurdity" of the Planning Board's finding. The Court does not find this argument persuasive. The fact that a prior composition of the Planning

3

Board reached a different conclusion on a different application is irrelevant to whether substantial record evidence supports the Planning Board's finding denying MacQuinn's expansion application. *See Sproul*, 2000 ME 30, ¶ 8, 746 A.2d 368 ("The possibility of drawing two inconsistent conclusions from the evidence does not make the evidence insubstantial.")

In sum, on reconsideration, the Court maintains its conclusion that the Planning Board's finding that the proposed expansion will not maintain and preserve the isolated wetland to the maximum extent is supported by substantial evidence in the record.

MacQuinn further argues that the Planning Board's finding that MacQuinn's proposed expansion would not preserve the landscape in its natural state as much as practicable, by minimizing tree removal and disturbance of soil, is not supported by substantial evidence. Although the Planning Board did not expressly find that the expansion would cause trees to be removed and soil disturbed in the parcel, that point has never been in controversy. Effectively, although couched in terms of substantial evidence, MacQuinn's argument is that the Planning Board committed an abuse of discretion in failing to waive these requirements of section J.1 because they would always defeat SPRO approval of gravel extraction. The Court has previously rejected the argument that it was an abuse of discretion for the Planning Board to apply section J.1 and declines to consider MacQuinn's reargument of the point. *See Shaw v. Shaw*, 2003 ME 153, ¶ 8, 839 A.2d 714 (citation omitted).

For all of the foregoing reasons, MacQuinn's motion for reconsideration of the amended judgment is denied.

4

Pursuant to M.R. Civ. P. 79(a), the Clerk is instructed to incorporate this Order by reference on the docket for this case.

So Ordered.


Dated: July 9, 2019 _____/s_____
Michael A. Duddy
Judge, Business and Consumer Docket

|                                      |     |                    |
| ------------------------------------ | --- | ------------------ |
| FRIENDS OF LAMOINE, et al.,          | )   |                    |
|                                      | )   |                    |
| Plaintiffs,                          | )   |                    |
|                                      | )   |                    |
| v.                                   | )   |                    |
|                                      | )   | ORDER ON 80B APPEAL |
| TOWN OF LAMOINE,                     | )   |                    |
|                                      | )   |                    |
| Defendant.                           | )   |                    |
|                                      | )   |                    |
|                                      | )   |                    |
| HAROLD MACQUINN, INC.,               | )   |                    |
|                                      | )   |                    |
| Party in Interest.                   | )   |                    |

This appeal from a municipal planning board's final action has been brought by Plaintiffs Friends of Lamoine and Jeffrey Dow, trustee of the Tweedie Trust (collectively "Friends") pursuant to M.R. Civ. P. 80B. Party-in-Interest Harold MacQuinn, Inc. ("MacQuinn") opposes the appeal. The Court heard oral argument on the Plaintiffs' Complaint on February 4, 2019.  Friends was represented by John Steed, Esq., and MacQuinn was represented by Edmond Bearor, Esq. Derek Jones, Esq. appeared for the Town of Lamoine ("Lamoine," or the "Town") but did not participate in the oral argument.  For the reasons discussed below, the Court grants Friends' appeal.

## FACTS

This appeal arises out of MacQuinn's attempt to obtain municipal approval to expand a gravel pit in Lamoine known as the "Kitteridge Pit." The relevant facts begin in September 2012 when MacQuinn filed applications with the Town Planning Board under the Town's

1

Gravel Ordinance (the "Gravel Ordinance") (Pl.'s Ex. O-2) and its Site Plan Review Ordinance ("SPRO") (Pl.'s Ex. O-7)[1], as permits were required under both ordinances at that time. (Gravel Ordinance § 6; SPRO § G.6.)

In May 2014, the Planning Board denied MacQuinn's applications. (Pl.'s Ex. C-1.) In June 2014, MacQuinn filed a complaint pursuant to M.R. Civ. P. 80B against the Town in Superior Court alleging inter alia that the Planning Board's decision was affected by unlawful bias. (MacQuinn Ex. 3.)[2] Concurrently, MacQuinn appealed to the Town's Board of Appeals ("BOA"). (Pl.'s Ex. C-3.) On November 16, 2016, MacQuinn and the Town settled the Superior Court case. (Pl.'s Ex. C-5.) Under the terms of the settlement agreement, the Planning Board would completely "do over" its consideration of MacQuinn's 2012 application. (Pl.'s Ex. C-4.) During the pendency of MacQuinn's applications, Lamoine amended its SPRO and Gravel Ordinance. (*See* Pl.'s Ex. O.) It was understood that these amendments would directly affect MacQuinn's application such that it would be much more challenging, if not impossible, for the application to be approved. Pursuant to the settlement, the Town agreed that the Planning Board would use the pre-amendment versions of the SPRO and Gravel Ordinance in force at the time of MacQuinn's initial application in 2012. The Town also agreed that John Holt, the chair of the Planning Board, who MacQuinn charged with unlawful bias,[3] would

---

[1] As part of the administrative record, Friends submitted what it purported to be the 2011 SPRO (Ex. O-4) but which was in fact a duplicate of the 2013 SPRO (Ex. O-5.) After oral argument, on March 21, 2019, this Court entered its Order to Supplement the Record, giving Friends seven days to supplement the record with a true and accurate copy of the 2011 SPRO to be designated Exhibit O-7. MacQuinn was given seven days from the date Friends' submitted Ex. O-7 to object on the grounds that the document submitted was not the 2011 SPRO or for any other reason. Friends complied with the Court's order the same day it was entered and submitted Pl.'s Ex. O-7, which appears to be the 2011 version of the SPRO. MacQuinn did not object to Ex. O-7.

[2] Although not submitted as part of the record by Friends, Friends agrees the Court may consider the three MacQuinn exhibits as supplementation of the Rule 80B record pursuant to M.R. Civ. P. 80B(e)(1), (g). (MacQuinn Br. 5 n. 5.)

[3] At oral argument, Friends conceded it agreed with MacQuinn that Mr. Holt likely had a conflict of interest and that his decision was therefore affected by bias, but challenged the sufficiency of the evidence of bias in the

2

recuse from the second-round application decision. The other Planning Board members accused of bias had left the Board by the time the parties agreed to the stipulation of dismissal.

The reconstituted Planning Board denied MacQuinn's Gravel Permit application on November 14, 2017, and denied MacQuinn's SPRO Permit application on December 11, 2017.[4] MacQuinn appealed those decisions to the BOA. The BOA conducted a de novo review of the application under the Gravel Ordinance. (Pl.'s Ex. C-26.) Despite MacQuinn's ardent request for a de novo review of its application under the SPRO as well, the BOA conducted solely an appellate review of the SPRO application pursuant to section M of the SPRO. (Pl.'s Exs. C-27, O-7.) The BOA determined that MacQuinn had satisfied the requirements under both ordinances, thereby reversing the Planning Board, and remanded both matters to the Planning Board for further proceedings consistent with its decisions. (Pl.'s Exs. C-26, C-27.) On remand, the Planning Board approved MacQuinn's applications under the Gravel Ordinance and under the SPRO. (Pl.'s Ex. C-28.) Friends did not appeal the Gravel Ordinance decision. Friends appeals only the SPRO decision.

STANDARD OF REVIEW

---

record on this appeal. The issue of Mr. Holt's bias is not particularly relevant on this appeal but there is evidence that he had a conflict of interest that could affect his ability to impartially decide on MacQuinn's application. Foremost, Mr. Holt was an officer of the Cold Spring Water Company, which owned property abutting the parcel onto which MacQuinn sought to expand its gravel pit. (Pl.'s Ex. A at 424-430.) The potential effect of the expansion on Cold Spring Water Company's water supply was a principle issue on which the Planning Board denied MacQuinn's application in both 2014 and again in 2017. (Pl.'s Ex. C-1, C-8.) Finally, after recusal, Mr. Holt opposed MacQuinn's application as a citizen during the "do over." (Pl.'s Ex. B-13.)

[4] At oral argument, MacQuinn conceded it received fair hearings by the newly constituted Planning Board.

Where, as here, the BOA acted only in an appellate capacity (regarding the SPRO), this Court reviews the decision of the Planning Board directly, and not the decision of the BOA.[5] *See Stewart v. Town of Sedgwick*, 2000 ME 157, ¶ 4, 757 A.2d 773. The decision under review in this case is thus the Planning Board's decision dated December 11, 2007. (Pl.'s Ex. C-8.) The decision of the Planning Board is reviewed for error of law, abuse of discretion, or findings not supported by substantial evidence in the record. *Aydelott v. City of Portland*, 2010 ME 25, ¶ 10, 990 A.2d 1024 (quotation omitted). The party seeking to overturn the decision bears the burden of persuasion. *Id.* The decision of the Planning Board is again reviewed directly upon further appeal to the Law Court. *Id.*

DISCUSSION

I.      The Planning Board and the Board of Appeals Properly Applied the Ordinances in Effect at the Time MacQuinn Applied for the Permits in 2012.

Friends' threshold argument is that the Planning Board and the BOA erred in applying the 2011 version of the SPRO—rather than the amended 2013 version—to MacQuinn's applications after the matter was remanded to the Planning Board by the Superior Court pursuant to the stipulation of dismissal entered into by the Plann ing Board and the Town. Friends does not dispute that the Town agreed to a "do-over" of MacQuinn's application under the 2011 version of the SPRO. (Pl.'s Ex. C-4.) Rather, Friends argues that the Town lacked the authority to enter into such an agreement given that the 2011 version was no longer in effect when the Town and MacQuinn agreed to a dismissal of the appeal pursuant to the stipulation of dismissal in 2016. (Pl.'s Ex. C-5.) MacQuinn responds that, because its

---

[5] As will become evident later in this decision, the BOA's decision to conduct only an appellate review of the Planning Board's SPRO decision—rather than a de novo review—effectively sealed the fate of this appeal, because of the deference given to a Planning Board's decision under the "substantial evidence" standard.

4

application was already pending when the ordinance was amended, that its application must be analyzed under the ordinance in effect at the time of its application.

Maine's so-called savings statute provides that "[a]ctions and proceedings pending at the time of the passage, amendment or repeal of an Act or ordinance are not affected thereby." 1 M.R.S. § 302. On its face, this would seem to govern the Planning Board's reconsideration of MacQuinn's application in 2017, given that MacQuinn's application was pending when the SPRO was amended in 2013 and the same application was submitted to the Planning Board in 2017. *See id.* However, Friends argues that because the appeal to the Superior Court was dismissed with prejudice, this terminated the "action or proceeding;" i.e. there was no action or proceeding "pending" after November 16, 2016. *See id.* (Pl.'s Ex. C-5.) In other words, conceptually the Planning Board was not reconsidering MacQuinn's still-pending application in 2017, it was instead considering a brand-new application, taking MacQuinn's application outside of the protection of section 302 and obligating the Planning Board to apply the amended SPRO.

The Court is not persuaded by Friends' argument for several reasons. First, the record shows that when MacQuinn resubmitted its application to the Planning Board in 2017, the Planning Board was in fact reconsidering MacQuinn's 2012 application. The actual application submitted to the Planning Board was the same as that submitted in 2012, and was signed and dated September 17, 2012. (Pl.'s Ex. A at 5.) The materials supporting the applications were essentially identical, albeit supplemented with additional hydrological data developed after MacQuinn's original submission in order to bring the application "up to date." (Pl.'s Ex. A at 602-08.) The Planning Board acknowledged in its written decision that it reached its result "[u]pon *reconsideration* of Harold MacQuinn, Inc.'s Site Plan Application

5

. . . ." (Pl.'s Ex. C-8 (emphasis added).) It would be disingenuous to rule now that MacQuinn's 2017 submission was a new application as opposed to reconsideration of a pending application when MacQuinn and the Town both considered it a reconsideration and the application itself was substantively the same, with the understandable caveat that MacQuinn supplemented its application with data that had been subsequently developed.

Second, the appeal to the Superior Court was not the only "proceeding" with respect to MacQuinn's application after the Planning Board denied it in May 2014. MacQuinn appealed concurrently to the BOA on both substantive and procedural grounds. (Pl.'s Ex. C-2.) This appeal was stayed, at MacQuinn's request, pending resolution of the matter in the Superior Court. (Pl.'s Ex. C-2.) The appeal to the BOA was essentially mooted by the settlement of the Superior Court appeal, but there is no evidence in the record of formal action taken to terminate the appeal to the BOA. In other words, the BOA never dismissed MacQuinn's appeal "with prejudice" or otherwise. Friends' argument based on the Superior Court's dismissal of MacQuinn's appeal to that body "with prejudice" (Pl.'s Ex. C-5.) is thus misplaced. The BOA appeal remained "pending" until the Planning Board took MacQuinn's application under reconsideration in 2017.

Finally, even if section 302 did not require the application of the 2011 SPRO to MacQuinn's reapplication in 2017, equitable considerations support the conclusion that MacQuinn nonetheless had a vested right to have its application considered under the 2011 SPRO. *Heber v. Lucerne-in-Maine Village Corp.*, 2000 ME 137, ¶ 8, 10, 755 A.2d 1064 ("When a complaint is filed after a change in the law, but states a cause of action that accrued before the change, we look to common law principles to determine whether the new or old law applies. At common law, an individual has a vested right in an accrued cause of action, and

6

subsequent statutory enactment cannot act to defeat retroactively such a cause of action.") (citation omitted). As a general proposition, "[v]ested rights do not accrue upon the filing of a permit application prior to amendment of a zoning ordinance even when the failure to grant the requested permit is palpably invalid." *Thomas v. Zon. Bd. Appeals*, 381 A.2d 643, 647. However, "bad faith or discriminatory enactment of a zoning ordinance for the purpose of preventing a legal use by the applicant may confer vested rights on the applicant." *Id.* Although Friends was not willing to concede the point at the oral argument, it did agree that Mr. Holt, the Planning Board Chair, likely was conflicted when the Planning Board denied MacQuinn's application in 2014. The record evidence supports the conclusion that the Planning Board denied MacQuinn's application in 2014 in bad faith because its decision was colored by bias. (MacQuinn Ex. 1.) Several members of the Board, including the Chair, had conflicts of interest that likely should have resulted in their recusal. (MacQuinn Ex. 1.) The Town agreed to have the remaining conflicted member of the Planning Board recuse himself from reconsideration of MacQuinn's appeal. (Pl.'s Ex. C-4.) Mr. Holt went on to oppose the proposed expansion both in an individual capacity and on behalf of Cold Spring Water Company after he recused. (Pl.'s Exs. B-12, B-13.) Thus, MacQuinn had a vested right to have its application considered under the 2011 SPRO.

In sum, the Court concludes that MacQuinn's 2012 application for a permit under the SPRO was still pending when the Planning Board took the application up for reconsideration in 2014. Reconsideration of MacQuinn's application under the 2011 SPRO is therefore not just what MacQuinn and the Town agreed to as a condition for dismissal of MacQuinn's appeal, it is required under 1 M.R.S. § 301. Alternatively, the Court finds that it would be inequitable to conclude that MacQuinn had no vested right in having its application

7

considered under the 2011 SPRO. Accordingly, The Planning Board and the BOA properly applied the ordinances in effect in 2012 when MacQuinn applied for permits.

II. The Planning Board Properly Determined that Section J.1 of the SPRO Applied to MacQuinn's Application, and that MacQuinn Did Not Satisfy Section J.1.

In the December 11, 2017 decision under review on this appeal, the Planning Board denied MacQuinn's application for site plan approval on the grounds that the plan it submitted did not satisfy three provisions of the SPRO: J.1, J.10, and J.17. (Pl.'s Ex. C-8.) Friends argues that the Planning Board acted within its discretion in applying those provisions and that its conclusions were supported by substantial evidence. MacQuinn argues that the Planning Board abused its discretion in applying the three provisions and that the evidence compels a contrary conclusion to that reached by the Planning Board.

At issue here are two particular articles of Lamoine's 2011 SPRO—Article J and Article K—and their interaction with Lamoine's Gravel Ordinance. The prefatory language to Article J, labeled "General Review Standards," provides in relevant part as follows:

> The following criteria and standards shall be utilized by the [Planning Board] in reviewing applications for site plan review approval . . . . The board may waive the criteria presented in this section upon a determination by the board that the criteria are not applicable to the proposed action or upon a determination by the board that the application of these criteria are not necessary to carry out the intent of this ordinance. The board shall approve the application unless the proposal does not meet the intent of one or more of the following criteria provided that the criteria were not first waived by the board.

(SPRO § J.) Article J goes on to list twenty distinct criteria of review standards aimed at a variety of topics ranging from preservation and enhancement of the landscape to advertising features. (SPRO § J.1-J.20.) Immediately following Article J is Article K, labeled "Special Review Standards." The prefatory language to Article K provides in its entirety: "The

8

following standards apply to specific types of projects. These standards, at the planning board's discretion, may be applied to uses similar to those identified in this section." Section K.3, headed "Mineral Exploration and Extraction," explicitly incorporates the Lamoine Gravel Ordinance: "All applicable standards of the Lamoine Gravel Ordinance, as amended, shall also be met." (SPRO § K.3.) It further provides for several performance standards in its own right.

The Planning Board found that three of the SPRO review standards from Article J were not satisfied in the plan that MacQuinn submitted with its application: Sections J.1, J.10, and J.17. (Pl.'s Ex. C-8.) The Planning Board also found that the special review standard in section K.3 was not satisfied because the proposed development did not meet the applicable Lamoine Gravel Ordinance standards. (Pl.'s Exs. C-8, C-9.) It also found that a number of the standards were inapplicable, and exercised its discretion under the SPRO to waive those criteria: Sections J.2, J.4-J.5, J.7, J.14-J.15, and J.19. The Planning Board found that the remaining performance standards listed in Article J were satisfied.

As the matter now comes before the Court pursuant to Rule 80B, the appeal presents a unique procedural posture—Friends appealed the BOA's SPRO decision, but did not appeal the BOA's Gravel Ordinance decision. Friends' decision to appeal one decision but not the other sets up a dichotomy that has a direct bearing on the Court's analysis.

The BOA conducted a de novo review of MacQuinn's application under the Gravel Ordinance, holding several hearings and conducting a site visit. (Pl.'s Exs. C-19 through C-22.) The BOA decided that MacQuinn had satisfied the requirements of the Gravel Ordinance and granted MacQuinn's appeal subject to the imposition of additional conditions to the Kitteridge Pit expansion. (Pl.'s Ex. C-23, C-26.) The BOA's de novo review of MacQuinn's

9

application under the Gravel Ordinance specifically found that MacQuinn's proposed expansion complied with section 7.D.3 of the Gravel Ordinance, reversing the Planning Board's finding that MacQuinn's proposed expansion did not comply with that section. (Pl.'s Exs. C-9, C-26; Gravel Ordinance § 7.D.3.) That section of the Gravel Ordinance provides:

> The Planning Board shall approve or deny those applications on which it is empowered to act as stated, in this Ordinance. The Planning Board shall, after the submission of a complete application including all the information requested, and after review of the most recent Code Enforcement Officer compliance report and any other available enforcement information available with respect to the gravel pit in question, grant a permit if it makes a positive finding based on the information presented that the proposed operation: . . . . Will not unreasonably result in water pollution, nor affect adversely existing ground water, springs, or ponds.

(Gravel Ordinance § 7.D.3.) Pursuant to section 7.D.3 of the Gravel Ordinance, the BOA found "that the proposed operation will not result in water pollution nor affect adversely existing ground water, springs, or ponds." Since that determination was not appealed and is final, it cannot now be disturbed or disregarded.

Based on the unique procedural posture of this case, the Court concludes that the Planning Board's findings that the requirements of sections J.10 and J.17 were not satisfied is unsupported by substantial evidence in the record, *see Aydelott*, 2010 ME 25, ¶ 10, 990 A.2d 1024, and constitute an abuse of discretion.

Section J.10 of the SPRO provides as follows:

> Groundwater Protection. The proposed site development and use shall not adversely impact the quality or quantity of groundwater in the aquifers or any water supply systems. Projects involving common on-site water supply of sewage disposal systems with a capacity of two thousand (2,000)

10

gallons per day or greater shall be required to demonstrate that the groundwater at the nearest down hydro-geologic gradient property line shall comply, following development, with the standards for safe drinking water as established by the State of Maine. The board may place conditions upon an application to minimize potential impacts to the town's groundwater resources.

(SPRO § J.10.) Section J.17 of the SPRO provides:

Stormwater drainage. The development shall not impose an unreasonable burden on the storm drainage system, water supplies for the property or on adjacent properties or other utilities. In determining an unreasonable burden, the development shall not cause capacities of existing ditches, culverts, and other components of the storm drainage system to be exceeded; the development shall not cause banks to be overflowed or increase flows such that erosion of or other drainage to the existing system occurs. Neither the quality nor quantity of existing water supplies shall be affected. Neither shall the development decrease the quantity of water available below the current and foreseeable future needs of the development or existing and potential development in the area.

(SPRO § J.17.) With respect to section J.10, the Planning Board found that MacQuinn did "not demonstrate[] the proposed site development's lack of adverse impact upon groundwater, and in particular upon the aquifer and the Cold Spring Water Company public water supply." (Pl.'s Ex. C-8.) As to section J.17, the Planning Board found that MacQuinn had "not met its burden of establishing that the proposed use will have no unreasonable burden on water supplies for the property or on adjacent properties, including water supply to Cold Spring Water Company." (Pl.'s Ex. C-8.)

"Substantial evidence is evidence that a reasonable mind would accept as sufficient to support a conclusion." *Sproul v. Town of Boothbay Harbor*, 2000 ME 30, ¶ 8, 746 A.2d 368 (citing *Veilleux v. City of Augusta*, 684 A.2d 413, 415 (Me. 1996)). Ordinarily, "[t]he possibility

11

of drawing two inconsistent conclusions from the evidence does not make the evidence insubstantial." *Id.* Also ordinarily, the substantial evidence standard "does not involve any weighing of the merits of evidence. Instead it requires us to determine whether there is any competent evidence in the record to support a finding." *Friends of Lincoln Lakes*, 2010 ME 18, ¶ 14, 989 A.2d 1128. It is also axiomatic that "[a] court will not substitute its judgment for that of a board . . . . local characterizations or fact-findings as to what meets ordinance standards will be accorded substantial deference." *Summerwind Cottage, LLC v. Town of Scarborough*, 2013 ME 26, ¶ 11, 61 A.3d 698 (quoting *Rudolph v. Golick*, 2010 ME 106, ¶ 8, 8 A.3d 684; *Toomey v. Town of Frye Island*, 2008 ME 44, ¶ 11, 943 A.2d 563) (internal quotation marks omitted).

However, because of the unique procedural posture of this case, the Court is not only presented with two, completely inconsistent sets of local factual findings by two separate Lamoine boards—but one of those sets of findings cannot be disturbed or disregarded. The BOA's de novo review of MacQuinn's application under the Gravel Ordinance specifically found that MacQuinn's proposed expansion complied with section 7.D.3 of the Gravel Ordinance, and reversed the Planning Board's finding that MacQuinn's proposed expansion did not comply with that section. (Pl.'s Exs. C-9, C-26; Gravel Ordinance § 7.D.3.) The BOA's factual finding under section 7.D.3 of the Gravel Ordinance "that the proposed operation will not result in water pollution nor affect adversely existing ground water, springs, or ponds[,]" is factually inconsistent with the Planning Board's findings under sections J.10 and J.17 of the SPRO that MacQuinn failed to meet those standards. (Pl.'s Ex. C-8, C-26; *compare* SPRO § J.10 *with* Gravel Ordinance § 7.D.3.) Given the BOA's superseding de novo factual findings regarding water issues under the Gravel Ordinance, which Friends has not appealed from, it

12

simply cannot be the case as a factual matter that MacQuinn's proposed expansion fails to satisfy the criteria of sections J.10 and J.17 of the SPRO. Accordingly, the Board's findings that MacQuinn failed to satisfy sections J.10 and J.17 of the SPRO are not supported by substantial evidence. Alternatively, the Planning Board erred as a matter of law in failing to waive sections J.10 and J.17 of the SPRO as inapplicable, in light of the BOA's unappealed decision based on section 7.D.3 of the Gravel Ordinance.

The same cannot be said about section J.1 of the SPRO, the full scope of which has no comparable standard under the Gravel Ordinance. Section J.1, labeled "Preserve and Enhance the Landscape," provides:

> The landscape shall be preserved in its natural state insofar as practicable by minimizing tree removal, disturbance of soil, and retaining existing vegetation during construction. After construction is completed, landscaping shall be designed and planted that will define, soften or screen the appearance of the development and minimize the encroachment of the proposed use on neighboring land uses.
>
> Environmentally sensitive areas such as aquifers, significant wildlife habitat, wetlands, steep slopes, floodplains, historic buildings and sites, existing and potential archaeological sites and unique natural features will be maintained and preserved to the maximum extent.

With regard to section J.1, by a 3 to 1 vote, the Planning Board found as follows:

> The Applicant presented insufficient evidence that the proposed use will preserve the landscape in its natural state as much as practicable, or maintain and preserve the Cold Spring Water Company supply, the aquifer, or the isolated wetland to the maximum extent. The Board also considered the provisions citing that after construction is completed, 'landscaping shall be designed and planted that will define, soften or screen the appearance of the development and minimize the encroachment of the proposed use on neighboring land uses. Environmentally sensitive areas such as aquifers, significant wildlife habitat, wetlands, steep slopes, floodplains, historic buildings and site, existing and potential archeological sites and

13

unique natural features will be maintained and preserved to the maximum extent.

(Pl.'s Ex. C-8.) Based in part on this finding, the Planning Board denied MacQuinn's SPRO permit application. (Pl.'s Ex. C-8.)

At the outset, for the reasons stated above with respect to the Planning Board's findings under section J.10 and J.17 of the SPRO, the Court concludes that the Planning Board's findings under section J.1 that MacQuinn presented insufficient evidence that the project would maintain and preserve the Cold Spring Water Company supply, the aquifer, and the isolated wetland to the maximum extent are not supported by substantial evidence. The Planning Board's finding that the second sentence of section J.1 regarding landscaping was not met is similarly inconsistent with the BOA's unappealed findings under section 7.D.6 of the Gravel Ordinance ("will not adversely affect surrounding properties"). (Pl.'s Ex. C-26.) Moreover, Friends does not indicate any facts in the record from which the Planning Board could have found that the proposed expansion lacked the required landscaping.

Instead, Friends identifies evidence before the Planning Board showing that the expansion would have an adverse impact on "unique natural features:" one of the standards that the Planning Board "also considered" in its written order. (Pl.'s Ex. C-8.) This narrows the issue to whether there are grounds to reverse the Planning Board's finding under section J.1 that MacQuinn's proposed expansion would otherwise fail to maintain and preserve any "unique natural features" to the maximum extent.

MacQuinn first argues that Planning Board's findings under section J.1 are too underdeveloped for this Court to meaningfully review. As noted above, the Planning Board made explicit negative findings under section J.1 only with respect to preservation of the landscape in its natural state as much as practicable and the effect on the Cold Spring Water

14

Company's supply and other hydrologic features. Otherwise, the Planning Board wrote only that it "also considered" the remaining requirements of section J.1, which includes the "unique natural features" requirement. MacQuinn argues that this is insufficient to provide meaningful review.

"The findings of a planning board must be 'sufficient to apprise either [a reviewing court] or the parties of the basis for their conclusion.'" *Bodack v. Town of Ogunquit*, 2006 ME 127, ¶ 14, 909 A.2d 620 (quoting *Christian Fellowship & Renewal Ctr. v. Town of Limington*, 2001 ME 16, ¶ 10, 769 A.2d 834). "[W]ritten factual findings must be sufficient to show the applicant and the public a rational basis of its decision." *Id.* (citing *York v. Town of Ogunquit*, 2001 ME 53, ¶ 14, 769 A.2d 172). "Findings may be insufficient if they merely state a conclusion using the terms of the relevant statute." *Schwartz v. Unemployment Ins. Comm'n*, 2006 ME 41, ¶ 10, 895 A.2d 965 (citing *Bayley v. Bayley*, 602 A.2d 1152, 1154 (Me. 1992)). *See also Beckford v. Town of Clifton*, 2014 ME 156, ¶ 34, 107 A.3d 1124 (Alexander, J., dissenting) ("When a written decision or findings are required by law, the findings must be sufficiently specific to permit understanding and meaningful appellate review. When findings of fact are required by law or ordinance, and an administrative agency 'fails to make sufficient and clear findings of fact and such findings are necessary to judicial review, [the Court] will remand the matter to the agency or board to make the findings.") (citations omitted).

However, "[i]f there is sufficient evidence on the record, the Board's decision will be deemed supported by implicit findings[.]" *Bodack*, 2006 ME 127, ¶ 14 n.7, 909 A.2d 620 (citing *Forester v. City of Westbrook*, 604 A.2d 31, 33 (Me. 1992)); *see also Christian Fellowship & Renewal Ctr. v. Town of Limington*, 2001 ME 16, ¶ 19, 769 A.2d 834 ("In some cases the

15

subsidiary facts may be obvious or easily inferred from the record and the general factual findings, and a remand would be unnecessary."). In this case, there is sufficient evidence in the record to support a negative finding under the "unique natural features" provision of section J.1 that the Planning Board "also considered." As a result, remand to the Planning Board is unnecessary.

In particular, there was considerable public testimony relating to Cousins Hill, which could be considered a unique natural feature given that it is the highest point in Lamoine and has geological significance. Many, if not most, of the public comments submitted in opposition to MacQuinn's proposed expansion mentioned the beauty or significance of Cousins Hill. (*See, e.g.*, Pl.'s Ex. B-2 (public remarks of citizen noting beauty of Cousins Hill); B-3 ("To tear down the largest hill in town, in the center of town, would hardly conserve natural beauty . . . ."); B-4 ("will remove a major geological feature of Lamoine, Cousin's Hill, in the heart of town"); B-5; B-7; B-13; B-16 at ¶ 6; B-17; B-19; B-20 at ¶ 2; B-40 at 29-31 (geological significance of Cousins Hill as a "Wave Cut Bluff" indicated on the Maine Ice Age Trail of the University of Maine, available at iceagetrail.umaine.edu); *see also* C-6 at 3 (multiple public comments at Planning Board hearing on November 14, 2017 relating to impact on Cousins Hill)). All of this information was before the Board when it decided that section J.1 was applicable to MacQuinn's application under the SPRO and, furthermore, that MacQuinn's application did not meet the standard.

The Court acknowledges that the Planning Board made no explicit findings of fact related to the "unique natural features" provision of section J.1, despite the requirement that the Planning Board "shall specify, in writing, its findings of fact, conditions, or reasons for denial." (SPRO § H.2.d.6.) In fact, there is no mention of Cousins Hill in the Planning Board's

16

decision. (Pl.'s Ex. C-8.) The Planning Board's only explicit findings of fact relate to the impact on the water supply for Cold Spring Water Company; findings that are not supported by substantial evidence in light of the subsequent findings of the BOA that were not appealed from, as explained above. (Pl.'s Ex. C-26.) Nonetheless, as described above, there is sufficient evidence on the record for the Planning Board's decision to be deemed supported by implicit findings of fact. *See Bodack*, 2006 ME 127, ¶ 14 n.7, 909 A.2d 620; *see also Driscoll v. Gheewalla,* 441 A.2d 1023, 1026 (Me. 1982) ("in the circumstances of this record the necessary implicit findings to sustain the Board's decision fully appear"); *Beahm v. Town of Falmouth*, No. AP-17-28, 2018 Me. Super. LEXIS 95, at *10 (April 23, 2018) (court inferred that the board made the necessary finding for its decision based on the concerns presented to the board at hearing).

This does not, however, resolve MacQuinn's primary argument that the Planning Board abused its discretion or committed legal error in applying section J.1 to its SPRO permit application. Determining whether a board has committed an abuse of discretion depends on the "facts and circumstances of the particular case and the governing law." *Sager v. Town of Bowdoinham*, 2004 ME 40, ¶ 11, 845 A.2d 567. *See also Pettinelli v. Yost*, 2007 ME 121, ¶ 11, 930 A.2d 1074 ("Review for an abuse of discretion involves resolution of three questions: (1) are factual findings, if any, supported by the record according to the clear error standard; (2) did the [Board] understand the law applicable to its exercise of discretion; and (3) given all the facts and applying the appropriate law, was the [Board's] weighing of the applicable facts and choices within the bounds of reasonableness."). "It is not sufficient to demonstrate that, on the facts of the case, the decision maker could have made

17

choices more acceptable to the appellant or even to a reviewing court." *Sager*, 2004 ME 40, ¶ 11, 845 A.2d 567.

In this case, MacQuinn argues that section J.1 is inapplicable to MacQuinn's proposed expansion, and gravel pits generally. MacQuinn claims that because the very purpose of a gravel pit is to remove material from its natural location it is not practicable to apply a standard that requires that the "landscape shall be preserved in its natural state insofar as practicable by minimizing tree removal, disturbance of soil, and retaining existing vegetation . . . ." (SPRO § J.1.) As such, no application for a gravel extraction operation could ever reasonably be expected to meet this review standard because it is simply incompatible with that type of activity. Therefore, argues MacQuinn, the Planning Board abused its discretion and erred as a matter of law by failing to waive the criteria of section J.1.

The problem with MacQuinn's argument is that it does not address the evidence before the Planning Board related to preserving "unique natural features . . . to the maximum extent" and the Planning Board's discretion to apply that particular requirement. (SPRO § J.1.) This is perhaps understandable, given the Planning Board's lack of explicit findings on the matter, but it was raised by Friends in its brief and at the oral argument. When asked by the Court whether a particular geologist's submissions and testimony to the Planning Board were the only basis for a negative finding under section J.1 of the SPRO, Friends quickly replied that it was not and referenced the "unique natural features" provision of that section. When MacQuinn was questioned about why it was an abuse of discretion to apply section J.1, it did not have an answer with respect to "unique natural features," instead referencing the other requirements under section J.1 that it argued were clearly inapplicable to a gravel pit, such as "minimizing tree removal, disturbance of soil, and retaining existing vegetation," or

18

those that were not supported by substantial evidence in light of the BOA's de novo decision under the Gravel Ordinance, such as the purported effect on aquifers and wetlands. MacQuinn's argument with respect to section J.1 lacked a meaningful response to whether and why it was an abuse of discretion to apply section J.1 to deny MacQuinn's application under the SPRO because it did not maintain and preserve the unique natural feature of Cousins Hill.[6]

On rebuttal, Friends again immediately referenced section J.1's language regarding unique natural features to rebut MacQuinn's characterization of section J.1 as a "landscaping standard." Finally, in its own rebuttal, MacQuinn raised the argument addressed above: that the Planning Board's findings with respect to "unique natural features" was too conclusory for the Court to meaningfully review. The Court agreed that the Planning Board's reasoning was "conclusory," and asked MacQuinn what more the Planning Board was required to say. MacQuinn only responded that it was not enough to say "you lose," and referenced Law Court authority for the proposition that a planning board's decision must be comprehensive enough for a court to meaningfully review. The Court addresses this authority above, and concludes that "there is sufficient evidence on the record [for] the Board's decision [to] be deemed supported by implicit findings." *Forester v. Westbrook*, 604 A.2d 31, 33 (Me. 1992).

It is also worth noting that in this case, Friends as the appealing party had the burden of showing why the Planning Board's decision was supported by the evidence, a burden it

---

[6] And to the extent MacQuinn's argument can be understood to also assert that the effect of the "unique natural features" provision of section J.1 is to make it impossible to permit gravel extraction operations, and thus for this additional reason the Planning Board abused its discretion by failing to waive section J.1, MacQuinn's argument goes too far. Section J.1 does not operate to preclude any gravel extraction operations in Lamoine: only those in environmentally sensitive areas, historic sites, existing and potential archaeological sites, and on sites containing unique natural features. (SPRO § J.1.)

met by highlighting the impact on Cousins Hill and identifying record evidence to support its finding even though it was not well articulated by the Planning Board below. This meant, practically, the Court was not required to comb through a lengthy record in search of facts to support the Planning Board's implicit finding. Moreover, the issue of the impact on Cousins Hill was mentioned so frequently by so many opponents to MacQuinn's expansion that it took relatively little effort to identify that evidence in the record, even without Friends' assistance. In fact, the fate of Cousins Hill appears to have been second only to the effect on the water source of Cold Spring Water Company in terms of citizen concerns. The Board's determination that MacQuinn failed to satisfy section J.1 is supported by the record.

MacQuinn also argues that section J.1 is inapplicable because the requirements of that section apply only during and after construction, and MacQuinn's application does not envision or plan for any construction. MacQuinn's construction argument fails for two reasons. First, MacQuinn's interpretation of the term "construction" is too cramped. According to the SPRO, "Constructed" is defined to mean: "Built, erected, altered, reconstructed, moved upon, or any physical operations on the premises which are required for construction. Excavation, fill, drainage, and the like, shall be considered part of construction." (SPRO § P, Ex. O-7 at pp. 34-35.) Although MacQuinn's application may not have contained plans for constructing buildings, it did contain plans for excavation.

Second, and more importantly, based on a plain reading of section J.1, the requirement to preserve environmentally sensitive areas, such as unique natural features, exists independent of construction considerations. It is significant that the text of section J.1 contains a paragraph break between the discussion of construction requirements and the discussion of preservation requirements contained in the final sentence of section J.1. The

20

"after construction" condition therefore does not modify or apply to the final sentence of section J.1. The requirement that "[e]nvironmentally sensitive areas such as aquifers, significant wildlife habitat, wetlands, steep slopes, floodplains, historic buildings and sites, existing and potential archaeological sites and unique natural features will be maintained and preserved to the maximum extent" applies to any project that requires approval under the SPRO, regardless of whether construction is involved. (SPRO § J.1.)

MacQuinn nevertheless points out that the Planning Board's decision itself is couched in terms of construction, which means the Planning Board misunderstood the meaning and purpose of section J.1. A careful reading of the Planning Board's findings and conclusions with regard to section J.1, however, undermines MacQuinn's argument. The Planning Board wrote that it "also considered" the provisions pertaining to construction. (Pl.'s Ex. C-8.) Then there is a period. After the period, the Planning Board quotes the last sentence of section J.1, which contains the "unique natural features" language. The structure of the Planning Board's decision, while arguably inartful, plainly indicates the Planning Board considered the construction provisions, and, separately, the "unique natural features" provisions. There is no evidence that the Planning Board conflated the provisions or misunderstood section J.1 of the SPRO.

Here, the Planning Board made a written finding that section J.1 of the SPRO applied to MacQuinn's expansion and was not met. There is readily identifiable and sufficient evidence to support that finding, and Friends identified that evidence and brought it to the Court's attention. The Board understood the law applicable to its exercise of discretion (and in fact waived other provisions it found inapplicable). Given all the facts and applying the appropriate law, the Board's weighing of the applicable facts and choices was within the

21

bounds of reasonableness. As such, the Court cannot conclude that it was an abuse of discretion for the Planning Board to apply section J.1 of the SPRO to MacQuinn's permit application and to find that at least one of the review standards of that ordinance was not met.

## CONCLUSION

For all the foregoing reasons, Friends' appeal is granted. The Planning Board decision dated December 11, 2017 denying MacQuinn's SPRO application is affirmed. The Board of Appeals decision dated June 22, 2018 is reversed, and the case is remanded to the Board of Appeals to review the matter in a manner consistent with this Order.

Pursuant to M.R. Civ. P. 79(a), the Clerk is instructed to incorporate this Order by reference on the docket for this case.

So Ordered.

Dated: April 4, 2019                    ____/s_____
                                        Michael A. Duddy
                                        Judge, Business and Consumer Docket

STATE OF MAINE
CUMBERLAND, ss.

BUSINESS & CONSUMER DOCKET
DOCKET NO. BCD-AP-2018-05

FRIENDS OF LAMOINE, et al.,                    )
                                               )
            Plaintiffs,                        )
                                               )
        v.                                     )
                                               )        ORDER TO SUPPLEMENT THE
TOWN OF LAMOINE,                               )        RECORD
                                               )
            Defendant.                         )
_____                )
                                               )
HAROLD MACQUINN, INC.,                         )
                                               )
            Party in Interest.                 )

This appeal from a municipal planning board's final action has been brought by Plaintiffs Friends of Lamoine and Jeffrey Dow, trustee of the Tweedie Trust (collectively "Friends") pursuant to M.R. Civ. P. 80B. Party-in-Interest Harold MacQuinn, Inc. ("MacQuinn") opposes the appeal. The appeal turns on interpretation of the Town of Lamoine's 2011 Site Plan Review Ordinance ("SPRO"). As part of the administrative record, Friends submitted what it purports to be the 2011 SPRO (Exh. O-4). MacQuinn argues that what Friends submitted as the 2011 SPRO is really a duplicate of the 2013 SPRO, and that pursuant to M.R. Civ. P. 80B(e) the failure of Friends to submit the 2011 SPRO is fatal to its appeal.

It is true that according to Rule 80B(e), the plaintiff must include as part of the record the full text of the applicable ordinance. This is not a case, however, where the plaintiff failed to include the applicable ordinance, and instead asked the Court to take judicial notice of the ordinance—which the Court cannot do. *Mills v. Town of Eliot*, 2008 ME 134, ¶ 23, 955 A.2d

1

258. Here, Friends submitted what it apparently thought was the 2011 SPRO, but which (perhaps due to clerical error) is possibly a duplicate of the 2013 SPRO. The Law Court expects the trial courts to decide Rule 80B cases based on an accurate record, and not clerical error. *See Penkul v. Town of Lebanon*, 2016 ME 16, ¶ 17 n.9, 136 A.3d 88 (trial court is authorized to resolve disputes about the contents of the administrative record); *Time Enough v. Town of Standish*, 670 A.2d 918, 920 (Me. 1996)(remand to the trial court to give plaintiff the opportunity to supplement the record).

Accordingly, if Exh. O-4 is not the 2011 SPRO, Friends has until Thursday, March 28, 2019, to supplement the record with a true and accurate copy of the 2011 SPRO. If a new exhibit is submitted, the exhibit shall be designated Exh. O-7. MacQuinn shall have seven calendar days from the date Friends submits Exh. O-7 to object on the grounds that the document submitted is not the 2011 SPRO, or for any other reason. Friends shall have three business days to reply to any objection.

Pursuant to M.R. Civ. P. 79(a), the Clerk is instructed to incorporate this Order by reference on the docket for this case.

So Ordered.


Dated: March 21, 2019                    ____/s_____
                                         Michael A. Duddy
                                         Judge, Business and Consumer Docket

STATE OF MAINE                           BUSINESS & COUNSUMER DOCKET
CUMBERLAND, ss.                          DOCKET NO. BCD-AP-2018-05 ✓

FRIENDS OF LAMOINE, et al.,              )
                                         )
             Plaintiffs,                 )
                                         )
        v.                               )
                                         )  ORDER DENYING PARTY IN INTEREST
TOWN OF LAMOINE,                         )  HAROLD MACQUINN, INC.'S MOTION
                                         )  TO DISMISS
             Defendant.                  )
_____        )
                                         )
HAROLD MACQUINN, INC.,                   )
                                         )
             Party in Interest.          )

Party in Interest Harold MacQuinn, Inc. ("MacQuinn") has for some time been seeking

to expand its gravel extraction operations at a pit in the Town of Lamoine (the "Town"). In

2018, the Town finally granted MacQuinn the necessary approvals. In response, Plaintiffs

brought this Rule 80B Complaint, challenging the propriety of the Town's actions. Seeking a

quick end to the challenge mounted by Plaintiffs, MacQuinn brought a Motion to Dismiss for

lack of jurisdiction. On October 9, 2018, in Ellsworth, Maine, the Court heard oral argument

on MacQuinn's Motion. Participating in the oral argument were John Steed, Esq. and Maxwell

G. Coolidge, Esq. for Plaintiffs and Edmond Bearor, Esq., for MacQuinn. For the reasons

discussed below, the Court denies MacQuinn's Motion to Dismiss.[1]

## BACKGROUND

In February 2017, MacQuinn applied to the Town Planning Board for a gravel permit

---

[1] MacQuinn brings this motion to dismiss for lack of jurisdiction over the subject matter of this appeal. *See* M.R. Civ. P. 12(b)(1). In considering a motion to dismiss for lack of jurisdiction, courts may look beyond the facts alleged in the complaint and consider materials outside the pleadings. *Gutierrez v. Gutierrez*, 2007 ME 59, ¶ 10, 921 A.2d 153.

and site plan approval; sometime thereafter, the Planning Board denied both applications. (Pl's Compl. ¶¶ 13-16.) MacQuinn timely appealed the denials to the Town's Municipal Board of Appeals (the "BOA"). (Pl's Compl. ¶ 17.) On May 8-9, 2018, the BOA voted to reverse the Planning Board's denial of the gravel permit, finding that MacQuinn met the requirements of the Gravel Ordinance. (Pl's Compl. ¶ 19; Mot. Dismiss Exs. A-B.) The BOA remanded the matter to the Planning Board to issue the gravel permit. On May 22, 2018, the BOA voted to reverse the Planning Board's site plan denial, finding that the Planning Board had misinterpreted the Town's Site Plan Review Ordinance ("SPRO"). (Pl's Compl. ¶ 20; Mot. Dismiss Ex. C.) The BOA remanded the matter to the Planning Board to grant the site plan application.[2] On remand, the Planning Board granted the gravel permit and on July 9, 2018, voted to approve MacQuinn's site plan application. (Pl's Compl. ¶ 21.) Plaintiffs filed their Complaint on August 8, 2018.

## STANDARD OF REVIEW

The court reviews a motion to dismiss under M.R. Civ. P. 12(b)(1) without making any inferences in favor of the plaintiff. *Persson v. Dep't of Human Servs.*, 2001 ME 124, ¶ 8, 775 A.2d 363. "When a court's jurisdiction is challenged, the plaintiff bears the initial burden of establishing that jurisdiction is proper." *Commerce Bank & Trust Co. v. Dworman*, 2014 ME 142, ¶ 8, 861 A.2d 882.

## ANALYSIS

The usual rule is that an appellant must wait for final municipal approval before taking an appeal. *Rockland Plaza Realty Corp*, 2001 ME 81, ¶ 6, 772 A.2d 256. An order

---

[2] The BOA later memorialized its votes in written decisions, but it is the date of the vote that is relevant to calculating the appeal period, not the date that a written decision is issued. 30-A M.R.S. §§ 2691, 4482-A, 4482-B; *see Beckford v. Town of Clifton*, 2014 ME 156, ¶¶ 11-13, 107 A.3d 1124.

2

remanding a matter to a municipal decision-maker for further proceedings is not a final judgment. *Town of Minot v. Starbird*, 2012 ME 25, ¶ 7, 39 A.3d 897. Accordingly, in this case the Planning Board's vote on July 9, 2018 constitutes the final municipal approval, not the earlier BOA decisions.

Rule 80B of the Maine Rules of Civil Procedure provides: "The time within which review may be sought shall be as provided by statute . . . ." In this case, since the final municipal administrative review of the project was by the Planning Board, and not the BOA, the time for appeal is governed by 30-A M.R.S. § 4482-A. 30-A M.R.S. § 2691(3)(H). Under Section 4482-A, the appeal period is thirty days. Thus, the appeal period started to run the day after the Planning Board's July 9, 2018 vote approving MacQuinn's site plan application, and closed thirty days thereafter, on August 9, 2018. Plaintiffs' Complaint is dated August 7, 2018 and was received on August 8, 2018. Using either date, Plaintiff's appeal is timely. Hence, this Court has jurisdiction to consider the appeal on its merits.

MacQuinn, however, argues that the Law Court's *Rockland Plaza* decision leads to a different result. In *Rockland Plaza*, the Court explains that when "all the substantive decisions on which final approval of the site plan would be based have already been made and all that remains for the Planning [Board] to do is the ministerial act of issuing an order of final approval of the plan" the Superior Court can accept a premature appeal. 2001 ME 81, ¶ 6, 772 A.2d 256. Relying on that language, MacQuinn asserts the Planning Board's action on remand was ministerial; that the BOA's May 22, 2018 vote was the last substantive municipal decision; and thus the appeal period should be measured from May 22, 2018. Pursuant to 30-A M.R.S. § 2691(3)(H), which applies when the appeal is from a final decision of a municipal board of appeals, the appeal period is 45 days. Measured from the BOA's May

3

22, 2018 vote, MacQuinn argues the appeal period closed on July 6, 2018, Plaintiffs' Complaint is untimely, and this Court has no jurisdiction.

MacQuinn's reliance on *Rockland Plaza* is misplaced. The issue in *Rockland Plaza* was whether the appeal was interlocutory, not whether the appeal was brought too late. The *Rockland Plaza* Court explained that when the final municipal act is ministerial, and only legal questions are implicated, the Court will accept a premature appeal as an exception to the general rule. *Id.* *Rockland Plaza* does not create a new rule governing what constitutes the final municipal act; to the contrary, *Rockland Plaza* recognizes a ministerial act as final for appeal purposes even though all substantive decisions have already been made and the final municipal act is merely the issuing of an order of final approval on remand. 2001 ME 81, ¶ 6, 772 A.2d 256. Indeed, the Law Court has cautioned against taking premature appeals—it is only when an exception applies that an otherwise interlocutory appeal will be considered. *See Bryant v. Town of Camden*, 2016 ME 27, ¶¶ 11-12, 132 A.3d 1183; *Town of Minot*, 2012 ME 25, ¶ 7, 39 A.3d 897; *Rockland Plaza Realty Corp*, 2001 ME 81, ¶ 6, 772 A.2d 256.

For all the foregoing reasons, MacQuinn's motion to dismiss is denied.

Pursuant to M.R. Civ. P. 79(a), the Clerk is instructed to incorporate this Order by reference on the docket for this case.

So Ordered.

Dated: 10-22-2018

_____
Michael A. Duddy
Judge, Business and Consumer Docket